Colón Biniel, Juez Ponente
*715 TEXTO COMPLETO DE LA SENTENCIA
I
La demandante, hoy apelante, M.D. Construction Company, Inc., ahora Futura Development of P.R., Inc. (“MD Construction”), solicita la revocación de la Sentencia emitida por el Tribunal de Primera Instancia, Sala Superior de Arecibo (el “TPI”) el 9 de mayo de 2002, archivada en los autos copia de su notificación el 21 de mayo. Escrito de Apelación, Sentencia y Notificación, a las págs. 19-29 del apéndice. El dictamen ordenó a las codemandadas, hoy apeladas, Autoridad de Carreteras y Transportación (Autoridad de Carreteras) y al Estado Libre Asociado de Puerto Rico (el ELA), pagar solidariamente a MD Construction $61,050, más intereses al tipo fijado por el Comisionado de Instituciones Financieras al momento de dictarse la sentencia y desde el 21 de octubre de 1974, fecha a partir de la cual comenzó la incautación de la propiedad de MD Construction, que dio lugar a la controversia. Oportunamente, MD Construction solicitó determinaciones de hechos adicionales, enmiendas a las ya efectuadas y conclusiones de derecho de conformidad a las disposiciones de la Regla 43.3 de las de Procedimiento Civil, 32 L.P.R.A. Ap. III. Escrito de Apelación, Moción Solicitando Determinaciones de Hechos Adicionales..., a las págs. 5-14 del apéndice. Por su parte, el ELA se opuso a la solicitud de MD Construction. Escrito de Apelación, Moción en Oposición a Enmiendas y a Solicitud de Determinaciones de Hechos y de Derecho Adicionales, a las págs. 15-18 del apéndice.
Posteriormente, el 24 de septiembre de 2002, notificada el 26 de septiembre, el TPI emitió una Resolución y Sentencia Enmendada, enmendando las determinaciones de hechos número 3, 4 y 6 de su sentencia original de 9 de mayo de 2002. Por último, declaró No Ha Lugar la solicitud de enmiendas a las conclusiones de derecho. Escrito de Apelación, Resolución y Sentencia Enmendada y Notificación, a las págs. 1-4 del apéndice.
Por su parte, el 31 de enero de 2003, la Autoridad de Carreteras sometió su alegato, solicitando la desestimación de la apelación y sostuviera la sentencia emitida por el TPI. Por otro lado, el 11 de marzo de 2003, el ELA presentó escrito titulado Escrito en Oposición de Apelación, solicitando se confirmara la sentencia apelada.
Resolvemos, con el beneficio de los escritos, del recurso KLAN-00-98365 presentado anteriormente en este foro, de la Exposición Narrativa Estipulada acompañada a dicho recurso y del derecho aplicable, no sin antes exponer lo acontecido.
II
El presente recurso surge como secuela de la Sentencia dictada anteriormente por otro panel de este Tribunal el 25 de marzo de 1999, en el caso KLAN-00-98365, revocando una previa sentencia del TPI emitida el 17 de noviembre de 1997, que determinó, entre otros, que el Estado pagaría únicamente por lo que expropiaba o por la pérdida del valor del uso, no por las oportunidades que el dueño pudiera haber perdido como resultado de la expropiación. En el dictamen del 25 de marzo de 1999, el anterior dispuso, entre otros, lo siguiente: “[a]l día de hoy aproximadamente veintiséis años (26) después de la incautación, el propietario no ha recibido una justa compensación por habérsele privado de todo uso productivo de su propiedad. ” Se revocó la sentencia del 17 de noviembre de 1997 y se devolvió el caso al TPI para que previa vista al efecto determinare la justa compensación que correspondiere a MD Construction.
En cuanto al caso ante nuestra consideración, surge de los documentos que el 20 de octubre de 1993, MD Construction presentó ante el extinto Tribunal Superior, Sala de Arecibo, una demanda de expropiación a la inversa contra la Autoridad de Carreteras y el ELA. Aunque no era totalmente necesario, pero conveniente, no incluyó copia de la referida demanda en el apéndice de su recurso. No obstante, tomamos conocimiento judicial del recurso KLAN-00-98365, mencionado anteriormente, presentado ante este Tribunal por MD Construction, donde, entre otros documentos, incluyó copia de la demanda. Alegó, en lo pertinente, que cierta propiedad de su pertenencia, una parcela de terreno de 3.74735 cuerdas, ubicadas en el Barrio Cotto del *716 Municipio de Manatí, había sido reservada desde el 1974 por el ELA y la Autoridad de Carreteras para la construcción del entonces Expreso De Diego. Alegó que la actuación del gobierno le privó de todos los usos productivos de su propiedad sin mediar la justa compensación que garantiza la Constitución del ELA. Celebrada la vista, el TPI (Hon. Edna Abruña Rodríguez, J.) mediante Sentencia de 17 de noviembre de 1997, declaró Sin Lugar la demanda en todas sus partes. Señaló, como hemos mencionado, que “[e]l Estado ha de pagar únicamente por lo que expropia o por la pérdida del valor de uso, no por las oportunidades que el dueño pueda perder como resultado de la expropiación”. Escrito de Apelación, Sentencia, a las págs. 52-59 del apéndice.
Inconforme, como hemos mencionado, MD Construction presentó ante este Tribunal (TCA) el recurso número KLAN-98-00365. Así las cosas, perfeccionado el recurso y con el beneficio, entre otros, de una Exposición Narrativa Estipulada, el panel integrado por su presidenta, la Juez Rivera de Martínez, y los jueces Rivera Pérez y Soler Aquino (Juez Ponente) mediante su Sentencia del 25 de marzo de 1999, revocó la sentencia emitida por el TPI el 17 de noviembre de 1997. El panel determinó que el Estado se incautó de la propiedad de MD Construction (3.63 cuerdas de terreno de la finca original) durante casi diecinueve (19) años (entiéndase desde el 21 de octubre de 1974 al 3 de mayo de 1993) y que dicha incautación constituyó una privación de todo uso productivo de la propiedad; devolvió el caso a dicho foro para que, “[pjrevio vista al efecto, determine la justa compensación que corresponde a la parte demandante-apelante.” Escrito de Apelación, Sentencia y Notificación, a las págs. 30-51 del apéndice.
Inconforme, el 28 de mayo de 1999, la Autoridad de Carreteras presentó recurso de certiorari ante nuestro Tribunal Supremo (CC-1999-395). En Resolución de 16 de julio de 1999, nuestro alto foro denegó su solicitud. Dos mociones de reconsideración que presentara fueron declaradas No Ha Lugar. Escrito de Apelación, Notificaciones y Resoluciones, a las págs. 80-81 y 86-89 del apéndice. Por su parte, e inconforme también con la sentencia, el 4 de mayo de 1999, MD Construction presentó recurso de certiorari ante nuestro Tribunal Supremo (CC-1999-338). El 18 de junio de 1999, nuestro alto foro declaró No Ha Lugar su solicitud, así también su solicitud de reconsideración. Escrito de Apelación, Notificaciones y Resoluciones, a las págs. 82-85 del apéndice.
Devuelto el caso, el TPI señaló una vista para establecer la justa compensación que en derecho le correspondía a MD Construction por la privación de todo uso productivo de su propiedad. A esos fines, el TPI (Hon. Rafael Angel Flores Díaz) pautó varios señalamientos. Las partes sostuvieron conversaciones encaminadas a un posible acuerdo transaccional; y de no poderse lograr un acuerdo satisfactorio para todas las partes, procederían a someter sus respectivas posiciones mediante memoriales de derecho. Definitivamente no pudieron llegar a un acuerdo, por lo cual el 29 de noviembre de 2000, la Autoridad de Carreteras presentó un escrito titulado Memorando de Derecho y/o Moción de Sentencia Sumaria. Escrito de Apelación, Memorando de Derecho..., a las págs. 97-141 del apéndice. Señaló, en lo pertinente, que al no existir una directriz en tomo al método de valoración de daños en casos como el de autos, procedió a hacer un análisis de los hechos particulares del caso, determinando que el método de la diferencia del valor de la propiedad antes y después de la reglamentación según se aplicó en Nenmers v. City of Dubrigue, 764 F2d. 502 (8vo Circ. 1985) era aplicable al presente caso. A tenor con ese método, la justa compensación a ser pagada a MD Construction por las 3.63 cuerdas de terreno sería a $61,050.
Por su parte, MD Construction presentó el 20 de junio de 2001 su Memorando de Derecho. Escrito de Apelación, Memorando de Derecho, a las págs. 142-152 del apéndice. Sostuvo que el método aplicable a la controversia era la medida del daño, ascendiendo el valor de su pérdida a $146,000. Por último, solicitó se dictara sentencia sumaria a su favor. Por otro lado, con fecha del 1ro. de agosto de 2001, el ELA presentó escrito titulado Memorando Complementario del ELA. Escrito de Apelación, Memorando Complementario del ELA, a las págs. 154-164 del apéndice. Señaló que el verdadero daño sufrido por MD Construction fue no recibir el rendimiento de su inversión en las 3.63 cuerdas de terreno y que para calcular dicho rendimiento había *717 que determinar el valor en el mercado que estas cuerdas de terreno tenían al momento de la incautación (reserva), multiplicando dicho valor por los intereses de cada año durante los cuales se mantuvo la reserva.
A los fines de que las partes argumentaran en corte abierta sus respectivas posiciones, se señaló una vista para el 9 de noviembre de 2001. Ese día, MD Construction presentó en corte abierta Réplica a Moción Acompañando Memorando de Derecho. Escrito de Apelación, Réplica a Moción..., a las págs. 165-170 del apéndice. Luego de oír los argumentos de las partes, el TPI les concedió término para presentar memorandos complementarios en cuanto a lo argumentado.
El 6 de diciembre de 2001, la Autoridad de Carrerteras presentó su escrito complementario, reiterando que el método aplicable a la controversia era el de rendimiento en el mercado del valor de la propiedad. Escrito de Apelación, Moción Complementaria a Memorando de Derecho, a las págs. 171-176 del apéndice. Por su parte, el 13 de diciembre, el ELA presentó un escrito avalando la posición de la Autoridad de Carreteras. Escrito de Apelación, Moción, a las págs. 177-178 del apéndice. Por otro lado, MD Construction presentó el 5 de febrero de 2002 su escrito complementario. Escrito de Apelación, Moción Complementaria, a las págs. 179-190 del apéndice. Por último, el ELA replicó al escrito complementario de MD Construction. Escrito de Apelación, Réplica a Moción Complementaria, a las págs. 191-192 del apéndice. Así las cosas, el TPI emitió la sentencia objeto del recurso a la que hemos hecho referencia anteriormente.
En su dictamen, el TPI expresó citando a Culebra Enterprises, 143 D.P.R. 943, 962 (1991), que no obstante el TCA haber establecido en su Sentencia del 25 de marzo de 1999 el término por el cual MD Construction debía ser compensado, no especificó el método a utilizarse para determinar la compensación. (Subrayado nuestro). Sentenció que: “[ejn ausencia de una disposición legal o directriz jurisprudencial estricta en cuanto a la utilización de un método específico para la cuantificación de los daños en este tipo de caso, queda a discreción del Tribunal de Primera Instancia la elección del método más adecuado para la valoración de los daños de acuerdo a las circunstancias particulares del caso”. Concluyó que el método apropiado para el cálculo de la indemnización era el de rendimiento en el mercado de la diferencia del valor de la propiedad al momento de la reglamentación, por el término o número de años que duró la incautación. Dicho método, consideró el tribunal, resultaba ser el método “de menos dosis de especulación...” y “el más razonable para determinar la justa compensación que consagra nuestra Constitución en estos casos”. Escrito de Apelación, Sentencia, a las págs. 23-24 del apéndice.
Como hemos mencionado, luego de MD Construction solicitar determinaciones de hechos adicionales, así como enmiendas a éstas y a las conclusiones de derecho, el 24 de septiembre de 2002, el TPI enmendó las determinaciones de hechos 3, 4 y 6 de su sentencia original del 9 de mayo de 2002. Por otro lado, declaró No Ha Lugar la solicitud de enmiendas a las conclusiones de derecho.
Inconforme aún, MD Construction acude ante este foro señalando que erró el Honorable Tribunal de Primera Instancia:

“1. Al acoger y utilizar el informe de valoración presentado por la Autoridad de Carreteras, el cual fuera preparado por el Sr. Luis I. Ríos [tasador], fechado al 23 de junio de 2000 constituyendo dicho informe una prueba que no fue presentada durante el desfile evidenciarlo del caso y ala cual la parte demandante-apelante no tuvo oportunidad de confrontar.

2. Al aplicar a los hechos del caso que nos ocupa, el “método de rendimiento en el mercado del valor de la propiedad al momento de la reglamentación por el término o número de años que duró la incautación reglamentaria. ”

3. Al adoptar la exposición que, en cuanto a su método propuesto, realizara la Autoridad de Carreteras y 
*718
apoyara el ELA.

4. Al determinar que la compensación que le corresponde a la parte demandante (aquí apelante) por concepto de los daños sufridos por la privación de todo uso productivo en las 3.63 cuerdas de su propiedad, equivale a $61,050.00. ”

III
En esencia, los errores se circunscriben a determinar si la compensación concedida a MD Construction por la privación del uso productivo de su propiedad por espacio de casi diecinueve (19) años, fue justa en derecho. Veamos.
En su primer señalamiento, MD Construction le imputa error al TPI al acoger y utilizar el Informe de Valoración presentado por la Autoridad de Carreteras, preparado por el Tasador de Bienes Raices, Luis I. Ríos, del 23 de junio de 2000, por constituir dicho informe prueba que no fue presentada en la vista original del caso ante la Hon. Edna Abruña Rodríguez, que culminó con la sentencia del 17 de noviembre de 1997, prueba a la cual MD Construction no tuvo oportunidad de confrontarse.
De entrada, es menester señalar que el Tribunal Supremo Federal no ha adoptado ninguna fórmula particular para calcular la compensación en este tipo de controversia, probablemente debido al carácter innovador del remedio. (Citas omitidas.) Entre los métodos propuestos para calcular la compensación se destacan: a) el precio de la opción; b) el canon de arrendamiento; c) la realidad del daño; d) la medida del daño; e) la valoración de los daños; y f) el rendimiento en el mercado de la diferencia del valor de la propiedad antes y después de la reglamentación, Culebra Enterprises v. ELA, 127 D.P.R. 943, 962-963 (1991).
Por otro lado, sabido es que la autoridad del Estado para expropiar está limitada por la exigencia de que la cosa sea para un fin público y se pague justa compensación. Culebra Enterprises, 127 D.P.R., a la pág. 952. De ordinario, el Estado ejerce directamente su poder constitucional instando un recurso de expropiación. Como contraparte de este poder constitucional, existe la acción de expropiación a la inversa para remediar aquellos casos de ocupación física o incautación por medio de reglamentación, sin previa consignación de justa compensación. Ahora bien, la obligación de pagar justa compensación también cobra vigencia cuando el Estado realiza una "incautación de hecho" al afectar sustancialmente el uso de la propiedad, físicamente o por medio de su reglamentación. En tales situaciones, la compensación comprenderá el valor de uso de la propiedad durante el tiempo en que el Estado privó al dueño de todo uso productivo de ella. Hampton Development v. ELA, 139 D. P.R. 877 (1996), citado en Culebra Enterprises, 143 D.P.R. a la pág. 947.
Como ya señaláramos, mediante su Sentencia de 25 de marzo de 1999, el TCA revocó la Sentencia del TPI de 17 de noviembre de 1997 y devolvió el caso a dicho foro para que previa vista, determinara la justa compensación que correspondiera a MD Construction. El TPI celebró varias vistas, algunas con el propósito de que las partes pudieran llegar a una transacción. Además, las partes sometieron Memorandos de Derecho para sustentar sus respectivas posiciones.
En su señalamiento, MD Construction le imputa error al TPI al acoger y utilizar el Informe de Valoración preparado por Luis I. Ríos, Tasador de Bienes Raíces, como método para fijar la compensación que le correspondía por la privación de todo uso productivo de sus 3.63 cuerdas, por ser dicho informe prueba que no fue presentada durante el primer juicio que culminó con la Sentencia del 17 de noviembre de 1997, prueba a la cual no tuvo oportunidad de confrontar. El informe fue incluido como exhibit 2 en el Memorando de Derecho y/o Sentencia Sumaria de 29 de noviembre de 2000, sometido por la Autoridad de Carreteras. Escrito de Apelación, Memorando de Derecho..., a las págs. 97-141 del apéndice.
*719 A base del informe, el TPI concluyó que ese método resultaba el “de menos dosis de especulación para determinar el valor de la propiedad al momento de la incautación” y fijar la compensación. Por su parte, MD Construction alegó que la actuación del TPI al dar valor probatorio al informe y al sustentar su determinación constituyó una privación adicional de los derechos constitucionales a que tiene derecho, entre estos, el derecho a confrontarse con la prueba.
Conforme a MD Construction, el TPI venía obligado a seguir el mandato de este Tribunal en su Sentencia de 25 de marzo de 1999, es decir, celebrar una vista evidenciaría para determinar el valor de la compensación que le correspondiere como consecuencia del Estado haberse incautado de su propiedad, cosa que no hizo. En su lugar, pautó varios señalamientos; las partes sostuvieron conversaciones a los fines de llegar a un acuerdo transacciona]; al no ponerse de acuerdo, se le ordenó discutir sus posiciones mediante memoriales de derecho. No obstante, el TPI admitió nueva evidencia en el memorial de derecho de la Autoridad de Carreteras, es decir, el Informe de Valoración del perito de la Autoridad de Carreteras incluido en dicho memorial. A nuestro juicio, el TPI no podía considerar ese Informe como prueba a los fines de su determinación, puesto que en el primer juicio celebrado los días 17 y 18 de marzo; 11, 12 y 13 de agosto de 1997 o en las vistas que dieron lugar a la sentencia del 17 de noviembre de 1997, el tasador, Luis I. Ríos, no prestó testimonio. Su informe se incorporó como parte del memorando de derecho que precisamente proponía uno de los métodos de valorar los daños en casos de expropiación a la inversa. Al incorporar el informe como prueba, el TPI privó a MD Construction de su derecho a confrontarse con esa prueba. Se le privó de la oportunidad de indagar sobre la preparación académica del perito, su experiencia, etc., es decir, sus calificaciones, así como la forma y manera en que confeccionó el informe, y cómo el perito (tasador) llegó a sus conclusiones.
De los autos surge la evidencia, testifical, documental y pericial necesaria para emitir un dictamen responsable y resolver la controversia, es decir, la fijación de la compensación correspondiente a MD Construction.
La admisión de la prueba extrínseca (Informe de Valoración) constituye un error extraordinario (Regla 4 de las Reglas de Evidencia) que da lugar a la revocación de la sentencia objeto del recurso. Esa prueba fue erróneamente admitida a pesar de la oposición de MD Construction y fue el factor decisivo y/o sustancial en que se fundamentó el TPI para dictar la referida sentencia. En consideración a lo cual, el primer error fue cometido.
Pasemos a la consideración de los restantes errores, es decir los errores dos (2), tres (3) y cuatro (4) que por estar relacionados entre si, los discutiremos conjuntamente. Veamos.
La valoración para fijar la compensación en el caso que nos ocupa es sumamente compleja y altamente especulativa. El TPI adoptó un método (el recogido en el Informe de Valoración que acompañó la Autoridad de Carreteras en su Memorial de Derecho) donde, a su juicio, lejos de ser hipotético y altamente especulativo, se compensa al propietario del terreno por las pérdidas sufridas como consecuencia de una incautación temporera.
Se ha requerido una justa compensación cuando la reglamentación priva al dueño de todo uso productivo de su propiedad. (Citas omitidas). Ello es así porque la privación total del uso económico de una propiedad equivale a una invasión física por parte del Estado. Aunque el efecto de esa privación sea temporero, se ha reconocido que procede una compensación por el valor del uso de la propiedad durante el tiempo en que el Estado privó al dueño de todo su uso productivo. Si posteriormente el Estado libera la propiedad de las restricciones impuestas, ello no lo exime del deber de compensar. Hampton Development Corp, 139 D.P.R. a las págs. 877, 890.
La situación en el presente caso es similar o idéntica al caso de Hampton. El Estado privó a MD Construction de todo el uso productivo de las 3.63 cuerdas de su propiedad, tras reservarlas para la construcción *720 del proyectado Expreso De Diego. Luego de estar reservada la propiedad por espacio de diecinueve (19) años, el Estado informó que ya no había de utilizar el terreno para la construcción del referido expreso. Al presente, no se ha compensado a MD Construction por la privación de todo el uso de su propiedad.
El método de rendimiento en el mercado de la diferencia entre el valor de la propiedad antes y después de la reglamentación, método acogido por el TPI para el cálculo de la indemnización a MD Construction, consiste de cinco etapas. Ha sido utilizado en casos en que el propietario de un terreno con una clasificación de zonificación reclama compensación cuando el Estado rezonifica parte de su propiedad para otro uso. Se realiza el cálculo a base del rendimiento que hubiese producido la diferencia entre el valor de la propiedad bajo la clasificación anterior y su valor tras la nueva zonificación, durante el período en que estuvo vigente la zonificación impugnada.
El método utilizado por el perito de MD Construction para fijar la compensación se conoce como medida del daño. MD Construction sostiene que del TPI haber evaluado la prueba presentada el 17 y 18 de marzo, 11, 12, y 13 de agosto de 1997, recogida en la Exposición Narrativa Estipulada, por las partes (págs. 60-79 del apéndice) en el proceso apelativo que produjo la primera Sentencia del 25 de marzo de 1999, pudo haber establecido la justa compensación que en derecho le correspondía. Sostiene a base de la referida prueba que sus daños ascienden a $146,000, suma fundamentada en que supuestamente iba a desarrollar 155 unidades de vivienda, y como consecuencia de la reserva de las 3.63 cuerdas para el proyecto del Expreso De Diego sólo se realizaron 130 unidades. Alegó que cada unidad de vivienda tendría una ganancia de $5,857. Al no poder realizar la construcción de las unidades indicadas, dejó de percibir $146,000, cantidad a que tiene derecho por concepto de justa compensación.
Surge de la Exposición Narrativa Estipulada suscrita el 4 de septiembre de 1998 por los representantes de MD Construction, Autoridad de Carreteras y el ELA, y conforme al testimonio del Ingeniero Civil Alonso Peterson Sixto, primer testigo de MD Construction, con conocimiento de hecho y aceptado por las partes y por el tribunal como testigo pericial, calificado como Ingeniero Civil, en lo esencial, declaró que de no haberse reservado el predio de terreno, se pudo haber seguido el desarrollo propuesto inicialmente ubicando allí las facilidades vecinales; se hubiese podido ubicar los solares que representa el plano de rediseño preparado por el Ingeniero Civil, Harry S. Figueroa Tirado; que MD Construction no tuvo ganancia en la venta de las propiedades porque no pudo construir; hubo que aportar $15,498 para compensar por el terreno que no se tenía para las facilidades vecinales debido a la congelación; de no haber existido la reserva se hubiese podido relocaüzar allí las facilidades vecinales, en cuyo caso no se hubiese tenido que pagar; ahora, la franja no se podía utilizar porque no había acceso apropiado; y las calles del proyecto no podían conectar con el Expreso De Diego, pues no era permitido. En su opinión pericial, era un resultado directo de la reserva, toda vez que no se podía conectar ninguna carretera a un expreso. Escrito de Apelación, Exposición Narrativa Estipulada, a las págs. 60-66 del apéndice.
Por su parte, el Ingeniero Civil, Harry S. Figueroa, segundo testigo de MD Construction, calificado como tal y como perito en desarrollo en solares, declaró, en esencia, que preparó unos planos de desarrollos de vivienda tomando la finca en sus orígenes con los planos de topografía y de mensura que incluyó el área afectada; en la actualidad, el acceso existente no sirve para urbanizar ni para dar un uso productivo al predio porque es inadecuado para mover terreno; de no haberse tenido la parcela congelada, se pudo haber utilizado una porción para solares, áreas verdes y recreativas, lo que hubiese liberado otros terrenos para hacer viviendas; rediseñó el proyecto y determinó que en aquel momento era económicamente viable construir 25 unidades de viviendas adicionales; al presente, la parcela no tiene ningún uso productivo para un desarrollador ni para otra persona que desee hacer allí algo con utilidad económica; de la totalidad de las 3.63 cuerdas congeladas eran utilizables en el proyecto original 1.90 cuerdas para vivienda y 1.70 cuerdas para facilidades vecinales y áreas verdes requeridas; y una vez congelado el predio de terreno, hubo que desarrollar menos vivienda. Escrito de Apelación, Exposición Narrativa Estipulada, a las págs. 66-72 del apéndice.
*721 El CPA, Abimael Semprit Cruz, fue el tercer testigo presentado por MD Construction, quien fue calificado y admitido como perito en finanzas y contabilidad. Declaró, en esencia, que conoce el Proyecto Valles de Manatí; fue contratado por MD Construction como perito para examinar cierta información financiera de los libros del referido proyecto; realizó una auditoría de sus libros de contabilidad, a los fines de determinar precio de venta, costo de venta, y ganancia en cada unidad de vivienda vendida por MD Construction en el proyecto Valles de Manatí; el precio de venta era de $28,700 por unidad de vivienda y su costo por unidad de $22,843, resultando en una ganancia de $5,857 por unidad. A base de lo anterior, opinó que 25 viviendas adicionales produciría una ganancia de, por lo menos, $146,000; además, que mientras más unidades se hubiesen construido, menor hubiese sido el costo y, por consiguiente, la ganancia hubiese sido mayor; y que la ganancia dejada de recibir de $146,000 era al año 1978, que era cuando el proyecto se terminó; y que a esa ganancia había que aplicarle el interés del Comisionado de Instituciones Financieras para cada año y así determinar la pérdida en la actualidad. En el contrainterrogatorio declaró que de haber sido 16 unidades adicionales de vivienda, la ganancia hubiese sido $93,712 más los intereses; que para calcular el costo de la unidad, se tomó en consideración el valor del terreno, el costo de las calles, sanitario, es decir, todo lo que era infraestructura, los materiales de construcción y la suma de todo ello era el costo total de la unidad. Escrito de Apelación, Exposición Narrativa Estipulada, a las págs. 72-73 del apéndice.
Por último, declaró como perito tasador el Ingeniero Civil, Jaime Isern Piñero. Fue contratado por MD Construction para hacer un informe sobre pérdida de ganancia en la parcela congelada, un estimado de lo que se había dejado de ganar por no haber podido usar ese predio de terreno durante el desarrollo. Atestó sobre el informe de valoración y el de pérdida de ganancia (daños) que preparó relacionados a la Urbanización Valles de Manatí (los que fueron admitidos en evidencia); su informe como perito tasador estuvo basado en 26 unidades de vivienda, en lugar de 25 unidades; que con el precio de venta de $746, 200 con un costo de $593,918 la pérdida en ingreso resultaba ser $152,281; los intereses computados a razón del 6% desde 1978 a 1995 daba una suma adicional de $294, 934 para un total de $447,216; de haber sido 25 unidades de vivienda (16 en terreno reservado y 9 en terreno utilizado como área verde), las que se habían dejado de construir por haber estado el desarrollo afectado por la reserva para la PR-22, la pérdida hubiere sido $408,000, cantidad que fijó como la pérdida de MD Construction.
Atestó, además, que preparó el informe de valoración de la parcela de MD Construction; a la parcela congelada le adjudicó un valor de $56,200, a razón de $3.00 el metro y más o menos $15,000 la cuerda de terreno; ese valor es luego de la pérdida del desarrollo; en la actualidad la parcela no tiene valor para un desarrollador; y la congelación trajo una pérdida de construcción de 25 viviendas dejando la parcela parcialmente enclavada e imposibilitada para desarrollarla en la actualidad. Escrito de Apelación, Exposición Narrativa Estipulada, a las págs. 73-74 del apéndice.
El ELA no presentó prueba y sometió el caso con la prueba sometida por MD Construction.
Por parte de la Autoridad de Carreteras, declaró el Ingeniero Jorge Rivera Jiménez, quien trabajó en la Autoridad de Carreteras como Jefe de la Oficina de Estudios Ambientales. También declaró Regino Fermaint Mujica, quien trabajó para la época de la incautación en la Junta de Apelaciones Sobre Construcciones y Lotificaciones como Oficial Examinador. Declararon sobre lo relacionado a la incautación del predio de terreno a MD Construction.
A nuestro juicio, conforme a la prueba presentada en el juicio original, quedó establecido que a MD Construction se le privó de todo uso productivo de su propiedad. En consideración a lo cual, la Autoridad de Carreteras y el ELA vienen obligadas de resarcirle por las pérdidas sufridas, las que quedaron probadas en el primer juicio. Aun cuando la congelación del predio de terreno se extendió por casi diecinueve (19) años, los daños han sido permanentes, toda vez que ha quedado plenamente demostrado que el predio de terreno en controversia no tiene utilidad alguna.
*722 Siendo ello así, es decir, no habiendo un valor del uso posterior del terreno, la Autoridad de Carreteras y el ELA vienen obligadas a resarcirle por las pérdidas de las 25 unidades que dejó MD Construction de construir. A base de la prueba presentada, el precio de venta por unidad era de $28,700 y el costo por unidad era de $22,843. En consideración a lo cual, de haberse construido esas 25 unidades de vivienda adicionales hubiesen producido una ganancia de por lo menos $146,000 en el año 1978, cuando el Proyecto Valles de Manatí se terminó de construir.
El Estado podía congelar la propiedad de MD Construction sin tener que compensar por un período de ocho (8) años, o sea desde el 21 de octubre de 1974 al 21 de octubre de 1982. Por lo cual, los intereses legales comenzarán luego de transcurrido el período de ocho (8) años, por entender que fue desde ese momento que la congelación constituyó una incautación de la propiedad de MD Construction. Hampton Development Corp., 139 D.P.R. a la pág. 885.
A nuestro juicio, de los autos y de la evidencia presentada en el juicio original, surge la evidencia, testifical, documental y pericial necesaria para emitir un dictamen responsable y resolver la controversia, es decir, la fijación de la compensación correspondiente a MD Construction. En consideración a lo cual, determinamos que erró el TPI en el método utilizado para determinar la justa compensación a concederle a MD Construction, por lo cual, se revoca la Sentencia Enmendada dictada por el Tribunal de Primera Instancia, Sala Superior de Arecibo, el 24 de septiembre de 2002.
En consecuencia, determinamos que la Autoridad de Carreteras y el Estado Libre Asociado de Puerto Rico pagarán solidariamente a MD Construction como compensación por la privación del uso productivo de su propiedad, la suma de $146,000, más los intereses al tipo fijado por el Comisionado de Instituciones Financieras al momento de dictarse la Sentencia, desde el 21 de octubre de 1982, fecha a partir de la cual este foro concluyó que comenzó la incautación de la propiedad a MD Construction.
Lo acordó el Tribunal y lo certifica la Secretaria General.
Aida I. Oquendo Graulau
Secretaria General
ESCOLIO 2004 DTA 9
1. Para los casos excepcionales de ocupación física, incautación de un derecho real, o restricciones a la propiedad por vía de reglamentación sin haberse presentado una acción de expropiación, se ha instituido la acción de expropiación a la inversa. La acción es denominada así porque se insta por el dueño de la propiedad contra el Estado para obtener la compensación a que tiene derecho, y generalmente le aplican las mismas normas y principios que rigen la acción de expropiación iniciada por el Estado. Hampton Development Corp. v. E.L.A., 139 D.P.R. 877, 888 (1996).