CULEBRA ENTERPRISES CORPORATION ET AL., demandantes y recurrentes, *v.* ESTADO LIBRE ASOCIADO DE PUERTO RICO, demandado y recurrido.

*Número:* RE-88-456 *Resuelto:* 8 de febrero de 1991

944

946

*Jaime Sifre Rodríguez* y *Miguel P. Cancio Bigas*, de *Sánchez-Betances & Sifre*, abogados de las recurrentes; *Rafael Ortiz Carrión, Procurador General, Norma Cotti Cruz, Subprocuradora General, María Adaljisa Dávila* y *Nilda P. Fuentes Ortiz, Procuradoras Generales Auxiliares*, abogados del recurrido.

EL JUEZ ASOCIADO SEÑOR NEGRÓN GARCÍA emitió la opinión del Tribunal.

## I

Entre 1966 y 1974, las entidades Culebra Enterprises Corporation, Vango, Inc., Navgo, Inc. y Govan, Inc. adquirieron aproximadamente cuatrocientas (400) cuerdas de terreno en la Isla Municipio de Culebra con el propósito de segregarlas y desarrollarlas en fincas de cinco (5) cuerdas. Para entonces el esquema reglamentario de la Junta de Planificación permitía tales segregaciones.

El 30 de noviembre de 1974 se enmendaron los Arts. 3 y 5 del Reglamento de Planificación Núm. 3 de 26 de enero 1949 y se aumentó a veinticinco (25) cuerdas el mínimo de terreno segregable. Al aprobarse estas enmiendas, Culebra Enterprises Corporation *et al.* habían segregado sus propiedades en lotes de cinco (5) cuerdas.

Después de la salida de la Marina de Guerra de Estados Unidos de Culebra se inició un proceso de planificación ordenada del municipio. La Junta de Planificación, al amparo de la facultad conferida por la Ley Núm. 75 de 24 de junio de 1975 (23 L.P.R.A. sec. 1 *et seq.*), enmendó el Plano de Usos de Culebra y reglamentó extensamente el desarrollo de los terrenos. En 1975 se declaró a Culebra "caso especial" y se aprobaron las Resoluciones JP-215, JP-215-A y Z-79. Como consecuencia, los terrenos de Culebra Enterprises Corporation *et al.* fueron clasificados como distritos "P" y "RO–25–C". Esta última clasificación, destinada al uso

agrícola, requería que las segregaciones tuvieran no menos de veinticinco (25) cuerdas y una (1) sola residencia para el agricultor y su familia. Como resultado de esta reglamentación, se detuvo el proyecto de desarrollo.

Por tal razón, en noviembre de 1977 Culebra Enterprises Corporation *et al.* solicitaron a la Junta de Planificación que les permitiese segregar y vender los solares con la cabida de cinco (5) cuerdas. Adujeron tener derecho a hacerlo por haberse verificado esas segregaciones antes de la aprobación de los nuevos reglamentos. Esta solicitud fue denegada. Igual suerte corrió la reconsideración notificada el 10 de mayo de 1978.

Inconformes, el 6 de febrero de 1979 instaron un pleito al amparo de la Ley Federal de Derechos Civiles, 42 U.S.C. sec. 1983, contra los miembros de la Junta de Planificación y la Autoridad de Desarrollo y Conservación de Culebra ante el Tribunal de Distrito de Estados Unidos para el Distrito de Puerto Rico. Alegaron que las actuaciones de los demandados violaron sus derechos civiles al privarles de su propiedad sin un debido procedimiento de ley y que el haber mantenido las zonificaciones "P" y "RO–25–C" constituía una incautación de la propiedad sin el pago de compensación. Seis (6) años después —el 27 de junio de 1985— en virtud de una estipulación se les permitió vender los solares de cinco (5) cuerdas. Quedó pendiente sólo la reclamación por daños y perjuicios. El 28 de junio de 1985 la misma fue desestimada. El Tribunal de Apelaciones del Primer Circuito confirmó. *Culebras Enterprises Corp. v. Rivera Ríos*, 813 F.2d 506 (1er Cir. 1987).[1]

Así las cosas, el 30 de mayo de 1986 demandaron al Estado Libre Asociado en el Tribunal Superior, Sala de Humacao. Alegaron que las designaciones de zonificación y uso constituyeron una congelación total de la propiedad que les privó de su uso.

---

[1] Guiado entonces por la doctrina de *Williamson Planning Comm'n v. Hamilton Bank*, 473 U.S. 172 (1985), dicho foro resolvió que la compensación solicitada debía ser gestionada inicialmente por medio del mecanismo estatal de expropiación a la inversa. Para la fecha de la decisión del Tribunal de Apelaciones del Primer Circuito —11 de marzo de 1987— ya Culebra Enterprises Corporation *et al.* habían presentado su reclamación en el Tribunal Superior, Sala de Humacao.

Adujeron, además, que las actuaciones de la Junta de Planificación constituyeron una expropiación temporera sin justa compensación. Aunque denominaron la acción "expropriación a la inversa", únicamente solicitaron como remedio el *resarcimiento* por los siguientes daños y perjuicios alegadamente causados por la incautación: pérdida del valor del uso de la propiedad ($3,000,000); reducción en el valor de las acciones de las corporaciones recurrentes ($100,000); gastos de inversiones adicionales requeridos debido a la congelación del uso de la propiedad ($490,000), y gastos y honorarios de abogado ($300,000).

El Estado compareció y levantó las defensas afirmativas de prescripción, no agotamiento de remedios administrativos e impedimento colateral por sentencia. Oportunamente el ilustrado tribunal (Hon. Aldo Segurola, Juez) resolvió que las alegaciones de la demanda eran "clásicas" y correspondían más bien a una acción en daños y perjuicios, por lo que el término prescriptivo era de un (1) año. Sentenció que la acción estaba prescrita por haber sido incoada pasado el año a partir del momento en que las demandantes tuvieron conocimiento del daño, a saber, en 1975, cuando se rezonificaron los terrenos a Distritos "P" y "RO–25–C".

A solicitud de Culebra Enterprises Corporation *et al.*, revisamos esa conclusión.

## II

La prescripción extintiva es un instituto propio de derecho civil inextricablemente unido al derecho que se intenta reivindicar. *Olmo v. Young & Rubicam of P.R., Inc.*, 110 D.P.R. 740 (1981). Allí, mediante el uso de la analogía, aplicamos el término de un (1) año del Art. 1868 del Código Civil, 31 L.P.R.A. sec. 5298, a las acciones por violación a los derechos civiles en su modalidad de discrimen. De origen estatutario, los principios generales de la prescripción están delineados en los Arts. 1861 a 1875 del Código Civil, 31 L.P.R.A. secs. 5291–5305. Reconocidamente la Asamblea Legislativa tiene amplia facultad para establecer los términos correspondientes, siempre y cuando no sean tan cortos que violen

la cláusula del debido proceso de ley. *Alicea v. Córdova*, 117 D.P.R. 676 (1986).

Su existencia responde a una política firmemente establecida para la solución expedita de las reclamaciones. Su propósito es evitar que el poder público proteja por tiempo indefinido los derechos no reclamados por su titular y que tampoco han sido reconocidos por aquellos sobre quienes pesan. M. Albaladejo, *Derecho Civil*, Barcelona, Ed. Bosch, 1989, T. I, Vol. 2, pág. 496. La prescripción castiga la inercia a la vez que estimula el ejercicio raudo de las acciones. Mientras más cerca de su origen se entablen las reclamaciones, más se asegura que el transcurso del tiempo no confundirá ni borrará el esclarecimiento de la verdad en sus dimensiones de responsabilidad y evaluación de la cuantía.

Los estatutos prescriptivos van más allá de lo que el legislador considera una sana política pública. También se asientan en la experiencia humana de que las reclamaciones válidas se accionan inmediatamente y no se abandonan. Los estatutos en cuestión promueven la justicia al evitar las sorpresas que genera la resucitación de reclamaciones viejas, además de las consecuencias inevitables del transcurso del tiempo, tales como: pérdida de evidencia, memoria imprecisa y dificultad para encontrar testigos. Como vemos, los estatutos prescriptivos fomentan la estabilidad jurídica de las relaciones y la seguridad en el tráfico jurídico.

El esquema estatutario de la prescripción extintiva en nuestro Código Civil está predicado en la coexistencia de un término genérico o de prescripción ordinaria y una serie de términos de prescripción extraordinaria. Para las acciones personales sin término, el ordinario es de quince (15) años. Art. 1864 del Código Civil, 31 L.P.R.A. sec. 5294. Su concordante ibérico —Art. 1964 del Código Civil español— ha sido criticado por su excesividad "en relación con las exigencias de nuestro tiempo", mientras que los códigos modernos estatuyen un término más corto que "supone un lapso prudente y no excesivo de tiempo". Q.M. Scaevola, *Código Civil*, Madrid, Ed. Reus, 1965, T. XXXII,

Vol. 2, págs. 800–801. Ya en *Olmo v. Young & Rubicam of P.R.*, *Inc.*, supra, habíamos aludido a la tendencia moderna de acortar los términos.

 Además de la prescripción ordinaria, el legislador señaló una serie de términos para distintas reclamaciones. Generalmente, con excepción de las acciones reales sobre bienes inmuebles y las hipotecarias,[2] los de prescripción extraordinaria son mucho más cortos, a saber: un (1) año para recobrar o retener la posesión y para exigir la responsabilidad civil por las obligaciones derivadas de la culpa o negligencia, Art. 1868 del Código Civil, *supra*; tres (3) años para ejercer acciones en reclamación de servicios prestados, Art. 1867 del Código Civil, 31 L.P.R.A. sec. 5297, y cinco (5) años para exigir el cumplimiento del pago de pensiones alimentarias, satisfacer el precio de arriendos y de cualquier otro pago que deba hacerse por años o en plazos más breves, Art. 1866 del Código Civil, 31 L.P.R.A. sec. 5296.

Cada uno de estos períodos de prescripción extraordinaria es el resultado de un consenso entre los principios que fomentan la prescripción y las particularidades intrínsecas de cada una de esas acciones. Así, el plazo de cinco (5) años "trata de proteger a los pequeños deudores evitando el perjuicio que resultaría de la acumulación de pagos pendientes ante la inactividad, posiblemente intencionada, de los acreedores", J. Puig Brutau, *Caducidad, prescripción extintiva y usucapión*, Barcelona, Ed. Bosch, 1988, pág. 136; y el de tres (3) años está fundado en que "es normal que los créditos a que se refiere se cobren sin dilación o en un tiempo muy breve", porque son "'deudas de la vida cotidiana, a cuya realización conviene que la Ley dé algún impulso', lo que justifica el acortamiento de los plazos", Puig Brutau, *op. cit.*, pág. 152.

Por su parte, la brevedad del plazo de un (1) año del Art. 1868 del Código Civil, *supra*, responde a que "la inexistencia de una

---

(2) Las acciones reales sobre bienes inmuebles prescriben a los treinta (30) años y las hipotecarias a los veinte (20) años. Arts. 1863 y 1864 del Código Civil, 31 L.P.R.A. secs. 5293 y 5294, respectivamente.

relación jurídica previa entre demandante y demandado hace aconsejable que éste no deba esperar mucho para conocer la actitud que el perjudicado ha de adoptar". L. Díez-Picazo, *La prescripción en el Código Civil*, Barcelona, Ed. Bosch, 1964, pág. 239. Apliquemos, pues, esta normativa al caso de autos.

## III

En su demanda, los recurrentes Culebra Enterprises Corporation *et al.* alegaron que la clasificación de los terrenos hecha por la Junta de Planificación —que duró nueve (9) años y diez (10) meses— constituyó una privación de la propiedad sin el debido proceso de ley o una incautación sin el pago de justa compensación. Ambas teorías están predicadas en el carácter fundamental del derecho al disfrute de la propiedad, el cual, junto al derecho a la vida y a la libertad, es uno de los cimientos de nuestra convivencia social democrática.

Aunque de carácter fundamental, el disfrute de la propiedad no es un derecho absoluto. La Asamblea Legislativa puede establecer limitaciones en beneficio del bienestar general. *Vélez v. Srio. de Justicia*, 115 D.P.R. 533 (1984); *E.L.A. v. Márquez*, 93 D.P.R. 393 (1966). Entre estas restricciones se encuentra el poder de expropiación, el cual faculta al soberano a desposeer de una cosa a su propietario para destinarla a un fin público. A su vez, la autoridad para expropiar está limitada por la exigencia de que la cosa sea para un fin público y se pague justa compensación. Art. II, Sec. 9, Const. E.L.A., L.P.R.A., Tomo 1; *E.L.A. v. Registrador*, 111 D.P.R. 117 (1981); *M. Mercado e Hijos v. Tribl. Superior*, 85 D.P.R. 370 (1962).

La obligación de pagar justa compensación puede manifestarse de tres (3) formas. De ordinario el Estado ejerce directamente su poder de dominio eminente instando un recurso de expropiación. Ahora bien, la Sec. 9 del Art. II de la Constitución, *supra*, también cobra vigencia cuando éste lleva a cabo una "incautación de hecho" al afectar de forma sustancial el uso físico

de la propiedad o por medio de su reglamentación. Véanse: *Sucn. García v. Aut. de Carreteras,* 114 D.P.R. 676 (1983); *Olivero v. Autoridad de Carreteras,* 107 D.P.R. 301 (1978). En esta situación el afectado por la actuación gubernamental es quien solicita, por *fiat* de una acción de expropiación a la inversa, que judicialmente así se decrete y le paguen la justa compensación.

 Recientemente el Tribunal Supremo federal decidió que cuando la reglamentación conlleva privar al dueño de *todo el uso efectivo* de su propiedad, no basta con sólo invalidar esa reglamentación. Bajo la Quinta Enmienda el remedio constitucional que procede es el pago de una compensación monetaria por el período que duró la reglamentación. *First Lutheran Church v. Los Angeles County,* 482 U.S. 304 (1987). Véanse: *Pamel Corporation v. E.L.A.,* 124 D.P.R. 853 (1989); Comentario, *Putting the Cart Before the Horse: Just Compensation for Regulatory Takings in First English Evangelical Lutheran Church v. County of Los Angeles,* 54 (Núm. 4) Brooklyn L. Rev. 1413 (1989); W. Fisher III, *The Significance of Public Perceptions of the Takings Doctrine,* 88 (Núm. 8) Columbia L. Rev. 1774 (1988); Comentario, *First English Evangelical Lutheran Church v. County of Los Angeles: Compensation of Landowners for Temporary Regulatory Takings,* 21 Ga. L. Rev. 1169 (1987). Para un análisis del remedio monetario, véanse: Comentario, *Affirmative Relief for Temporary Regulatory Takings,* 48 (Núm. 4) Pitt. L. Rev. 1215 (1987); Nota, *Compensation for Regulatory Takings: Finality of Local Decisionmaking and the Measure of Compensation,* 63 (Núm. 3) Ind. L.J. 649 (1988).(3)

---

(3) Advertimos, sin embargo, que ciertas actuaciones gubernamentales no configuran necesariamente una incautación o perjuicio a la propiedad dentro del significado constitucional. En esas situaciones el Estado no está obligado a pagar justa compensación. Comentario, *Distinguishing Eminent Domain from Police Power and Tort,* 38 Wash. L. Rev. 607 (1963). Se trata de manifestaciones legítimas del *poder de razón de Estado* cuyo propósito es proteger la salud, la seguridad, la moral y proveer para el bienestar general. Siempre y cuando la reglamentación de carácter socioeconómica no sea irrazonable, arbitraria o caprichosa, la misma constituirá un ejercicio válido de dicho poder. *Vélez v. Srio. de Justicia,* 115 D.P.R. 533 (1984); *E.L.A. v. Márquez,* 93 D.P.R. 393 (1966).

En nuestra jurisdicción, para balancear los intereses propietarios de los ciudadanos con los intereses y necesidades de la comunidad, se aprobó la Ley Núm. 2 de 29 de enero de 1979, hoy derogada. Esta pieza legislativa fija en ocho (8) años el período máximo durante el cual el Estado puede reservar o congelar propiedad privada para fines públicos. Dispone, además, un término relativamente corto —noventa (90) días— después del período de reserva para que, una vez solicitado, la agencia con jurisdicción adquiera la propiedad congelada. Transcurrido el período de noventa (90) días sin que la agencia haya ejercitado esa opción, la Junta de Planificación viene obligada a eliminar las restricciones.

La fiel solución de este recurso no exige dilucidar si el proceder de la Junta de Planificación constituyó o no una incautación de la propiedad o un ejercicio ilegal del poder de razón del Estado. A fin de cuentas, la causa de acción instada por Culebra Enterprises Corporation *et al.* está fundada en un derecho fundamental expresamente reconocido en la Constitución.

Ahora bien, precisamente por su génesis constitucional cualquier acción a su amparo requiere la mayor diligencia. No puede discutirse con seriedad la deseabilidad de que aquellas situaciones que ofenden los postulados básicos constitucionales que regulan la relación entre el Estado y sus ciudadanos deben ser corregidas de inmediato.

En particular, la estabilidad en la planificación y el mejor uso de nuestras limitadas tierras apuntan, por imperativo, hacia la deseabilidad de un término relativamente corto para reclamar cualquier violación al derecho de propiedad. Varias consideraciones apoyan el término de un (1) año dispuesto en el Art. 1868 del Código Civil, *supra*. El mismo contribuye a mitigar la pérdida que puede haber sufrido un demandante y, a la misma vez, limita la responsabilidad económica del Estado. J. Mixton, *Compensation Claims Against Local Governments for Excessive Land-Use Regulations: A Proposal for More Efficient State Level Adjudication*, 20 (Núm. 3) Urb. Law. 675 (1988).

Dicho término actúa como catalítico para el inicio de reclamaciones. Acelerar tales acciones evita que el poder público se entronice de manera irrazonable en situaciones constitucionalmente impermisibles.

 *Finalmente*, tiende a conservar la prueba en su mejor estado y libre de los embates del transcurso del tiempo. No olvidemos que en muchos casos las motivaciones que mueven al aparato gubernamental a aprobar ciertas reglamentaciones determinan su validez.

## IV

Aclarado que el término aplicable al caso de autos es un (1) año, examinemos si la demanda presentada por Culebra Enterprises Corporation *et al.* estaba prescrita.

 El Art. 1869 del Código Civil, 31 L.P.R.A. sec. 5299, dispone que "[e]l tiempo para la prescripción de toda clase de acciones, cuando no haya disposición especial que otra cosa determine, se contará desde el día en que pudieron ejercitarse". Señala Puig Brutau, *op. cit.*, pág. 58, que para determinar el momento en que comienza a correr el término hay que atender a la posibilidad legal de poder ejercitar la acción. Por lo tanto, el tribunal de instancia debió examinar el efecto de la Ley Núm. 2, *supra*, sobre la presente acción.

 Según expuesto, esta legislación fija un período *máximo* de ocho (8) años durante el cual el Estado puede reservar o congelar la propiedad privada en la consecución de un fin público. La medida persigue establecer de antemano un término. De esta forma el Estado cuenta con tiempo suficiente para llevar a cabo cualesquiera estudios necesarios antes de decidir el destino de la propiedad, sin limitar *ad perpetuam* e irrazonablemente los derechos del dueño afectado. Sin embargo, ello no significa que el Estado viene obligado a mantener la restricción por los ocho (8) años. Puede liberar la propiedad antes.

La interacción armoniosa entre el Art. 1869 del Código Civil, *supra*, y la Ley Núm. 2, *supra*, nos mueve a concluir que el término prescriptivo aplicable en estos casos, de ordinario, comienza a decursar desde que se libera la propiedad de las restricciones. Como máximo, se iniciará después del octavo año de reserva.

En el caso de autos, en virtud de la estipulación en el foro federal con los miembros de la Junta de Planificación, el Estado liberó los terrenos de Culebra Enterprises Corporation *et al.* antes de que se completara ese período de reserva. Obviamente, desde esa fecha —27 de junio de 1985— comenzó a correr el término prescriptivo de la acción. Presentada el 17 de junio de 1986, no estaba prescrita.

*Se dictará sentencia revocatoria.*

El Juez Presidente Señor Pons Núñez y los Jueces Asociados Señores Hernández Denton y Alonso Alonso se inhibieron.