Versión para imprimir


EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Plaza de Descuentos, S.E.<br><br>    Peticionaria<br><br>                    v.<br><br>Estado Libre Asociado de Puerto Rico<br><br>    Recurrido | Certiorari<br><br>2010 TSPR 62<br><br>178 DPR \_\_\_\_ |

Número del Caso: CC-2008-162

Fecha: 23 de abril de 2010

Tribunal de Apelaciones:

Región Judicial de San Juan, Panel III

Jueza Ponente:
Hon. Zadette Bajandas Vélez

Abogado de la Parte Peticionaria:

Lcdo. José A. Cuevas Segarra

Oficina del Procurador General:

Lcda. Maite D. Oronoz Rodríguez
Procuradora General Interina

Materia: Interdicto Permanente y Daños y Perjuicios

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Plaza de Descuento, SE

       Peticionaria

         v.

Estado Libre Asociado de
Puerto Rico                 CC-2008-162

       Recurrido

SENTENCIA

En San Juan, Puerto Rico, a 23 de abril de 2010.

Acude ante nos Plaza de Descuento, SE, y nos solicita que revoquemos una sentencia del Tribunal de Apelaciones. En dicha sentencia, el foro apelativo intermedio revocó al Tribunal de Primera Instancia. El foro primario había ordenado al Estado Libre Asociado (E.L.A.) a indemnizar a Plaza de Descuentos por las restricciones impuestas sobre la propiedad de esta última. Como cuestión de umbral, debemos determinar si la causa de acción ejercitada por Plaza de Descuentos se encuentra prescrita. Por entender que si lo está, según la Ley Núm. 46 de 26 de junio de 1987, 32

L.P.R.A. sec. 2923 *et seq.*, confirmamos.

I

El predio de terreno objeto de este recurso es un solar localizado en el Barrio Sabana Llana del Municipio de San Juan. Este predio era parte de la finca Berwind propiedad de la extinta Corporación de Renovación Urbana y Vivienda (C.R.U.V.). Esa finca originalmente era de 153.64 cuerdas. En 1976, la Junta de Planificación zonificó el predio de terreno objeto de este recurso y propiedad de la C.R.U.V., como Distrito "P", es decir, para uso público con el propósito de un desarrollo futuro. Según esta reglamentación, la C.R.U.V. podía desarrollar el predio con la limitación de construcción de obras a un costo no mayor de $25,000. Posteriormente, dicha limitación se aumentó a $35,000.[1]

En 1984, la C.R.U.V. comenzó el trámite para vender un predio de terreno comprendido en el solar mayor de 3,882.45 metros cuadrados. Esta venta se realizó el 1 de septiembre de 1988 por $1,176,000.00 a Mueblerías Berríos, Inc. En dicha venta se mantuvo la zonificación de Distrito "P" que estaba vigente en este predio de terreno hacía 12 años.

Este predio de terreno fue objeto de varias consultas en las que se consignó su zonificación como Distrito "P". Sin embargo, la Junta de Planificación utilizó su discreción para permitir variaciones a los proyectos propuestos sujeto al

---

[1] Luego de la presentación de la demanda en este caso, el 13 de marzo de 2003, esta zonificación "P" se modificó para que fuera clasificada como Distrito Rotacional "D". Sin embargo, ambos clasificaciones son reservaciones de la propiedad para beneficio público. Por lo tanto, el cambio de zonificación no altera la controversia ante nos.

cumplimiento de varias condiciones. No se realizó ninguna de estas obras. A pesar de esto, el 10 de noviembre de 1996, Plaza de Descuentos le compró a Mueblerías Berríos alrededor de una tercera parte de los 3,882.45 metros cuadrados que esta última le compró a C.R.U.V. en 1988. Cabe destacar que antes de esta compraventa, hacía ya veinte años que este predio tenía la limitación impuesta por la zonificación Distrito "P" que limitaba el valor de las obras a construirse. Esta zonificación de Distrito "P" se hizo constar en la escritura de compraventa entre Mueblerías Berríos y Plaza de Descuento. Este predio así zonificado fue adquirido por Plaza de Descuento por $392,000.00.[2] Después de la venta, Plaza de Descuento suscribió contratos de arrendamientos para ocho negocios de comida por un período de cinco años prorrogables por igual término.

En el 2000, Plaza de Descuentos y los arrendatarios presentaron ante A.R.Pe. un anteproyecto para el desarrollo de los ochos negocios de comidas, con un costo total de $33,400.00, dentro del límite establecido por la zonificación Distrito "P" ($35,000.00). A.R.Pe. aprobó este anteproyecto y el permiso de construcción, el 9 de noviembre de 2000 y el 6 de marzo de 2001, respectivamente.

Varios meses después, el 10 de julio de 2001, Plaza de Descuento presentó ante A.R.Pe. una carta en la que informó una variación al proyecto aprobado. En ésta, notificó cambios en los materiales a utilizarse en la obra. Las obras originalmente

---

[2] La compraventa por $392,000.00 fue para un predio menor compuesto por aproximadamente una tercera parte del predio de terreno comprado por Mueblerías Berríos 8 años antes y que le costó entonces $1, 176,000.00.

aprobadas eran materiales de madera y otros combinados. Ahora los materiales serían hormigón armado y columnas de acero. Tras las enmiendas, el Municipio de San Juan reiteró su endoso preliminar a la obra pues el proyecto propuesto contravenía su política pública. Además, varios grupos vecinales presentaron querellas en contra del proyecto.

El 21 de diciembre de 2001, A.R.Pe. inició un proceso que culminó en la suspensión de los permisos otorgados ya que las obras violaban la reglamentación establecida para la zonificación de los distritos "P", porque el nuevo costo de las obras sería de $38,000.00. Este costo excede el límite de $35,000.00 establecido para los distritos "P".

El 19 de febrero de 2003, Plaza de Descuentos presentó ante el Tribunal de Primera Instancia una demanda de interdicto permanente, sentencia declaratoria y daños y perjuicios contra el E.L.A. Alegó que el Estado le incautó su propiedad por más de 14 años. En la demanda, Plaza de Descuentos reclamó una indemnización de $1,000,000.00 por los daños causados por la anulación del uso productivo de la propiedad, $1,000,000.00 por las pérdidas económicas y $100,000.00 por la lesión a su imagen comercial.

El Tribunal de Primera Instancia emitió sentencia parcial en la que decretó con lugar el interdicto permanente. Dicho foro ordenó a la Junta de Planificación que reclasificara el terreno aludido conforme al criterio de mejor uso comercial y trasladó a la sala ordinaria del foro primario el asunto sobre la acción en daños.

El Estado alegó, entre otras cosas, que la causa en daños estaba prescrita. Sin embargo, el foro primario condenó al E.L.A. a indemnizar los daños causados por la zonificación impugnada. El Estado acudió al Tribunal de Apelaciones y alegó, entre otras cosas, que la acción en daños se encontraba prescrita. Ese foro revocó la sentencia recurrida, al aplicar la doctrina de daño auto infligido, debido a que Plaza de Descuento conocía de las limitaciones del terreno antes de adquirirlo, por lo que no podía reclamar la indemnización de un daño que ella se causó a sí misma. De esta decisión acude ante nos Plaza de Descuento y el Estado reproduce los mismos argumentos que planteó en el Tribunal de Apelaciones.

II

Tanto la Constitución de Estados Unidos como la de Puerto Rico reconocen el derecho que protege uno de los activos más valiosos que tienen los seres humanos, a saber, la propiedad inmueble. P. Muñoz Nazario, ¿Es inconstitucional la Ley de Expropiación a la Inversa?, 48 Rev. de Der. Puertorriqueño 23 (2008). Las Enmiendas Quinta y Décimo Cuarta de la Constitución de los Estados Unidos y el Artículo II, Sección 9, de la Constitución de Puerto Rico, 1 L.P.R.A., imponen al gobierno la obligación de compensar la privación de propiedad privada para usos públicos.

La obligación del Estado de pagar justa compensación puede surgir en tres formas: Cuando: (1) ejerce directamente su poder de dominio eminente instando un recurso de expropiación; (2) por medio de su reglamentación: ó (3) cuando ocurre una incautación de hecho al afectar de forma sustancial el uso físico de la propiedad por medio de la reglamentación. Velázquez Velázquez v. E.L.A., 135 D.P.R. 84 (1994); Culebra Enterprises Corp. v. E.L.A., 127 D.P.R. 943 (1991). Al amparo de la segunda modalidad es que surge una causa de acción para compensar el daño causado durante el período que duró la reglamentación que afectó a la propiedad. Id. Esta causa de acción en daños está disponible para casos de propiedades afectadas por una zonificación temporera realizada por el Estado. Hampton Development Corp. v. E.L.A., 133 D.P.R. 877 (1996).

Esta acción en daños tiene un período prescriptivo. La prescripción es una institución que extingue un derecho por la

inercia durante un período de tiempo determinado. La prescripción extintiva proviene del derecho civil y está inextricablemente unida al derecho que se intenta reivindicar. Culebra Enterprises Corp. v. E.L.A., supra; Olmo v. Young & Rubicam of P.R., Inc., 110 D.P.R. 740 (1981). En el pasado hemos aplicado por analogía el término prescriptivo de un año contenido en el Art. 1869 del Código Civil, supra, a acciones en daños como lo sería una reclamación de justa compensación contra el Estado por la incautación temporal de una propiedad privada. Ibíd.

Está claramente establecido que "la Asamblea Legislativa tiene amplia facultad para establecer los términos correspondientes, siempre y cuando no sean tan cortos que violen la cláusula del debido proceso de ley". Culebra Enterprises Corp. v. E.L.A., supra, págs. 949-950. Véase además, Alicea v. Córdova, 117 D.P.R. 676 (1986). La prescripción pretende castigar la inercia del titular del derecho que provoca incertidumbres. Id. El término prescriptivo es fundamental para asegurar la solución expedita de reclamaciones y para cumplir con el propósito de evitar que el poder público proteja por tiempo indefinido derechos no reclamados por su titular. Id.; M. Albaladejo, Derecho Civil, Barcelona, Bosch, 1989, T.I, Vol. 2, pág. 496. Con la prescripción el legislador establece una importante política pública de justicia al evitar las sorpresas que generan reclamaciones viejas y además, es reflejo de "la experiencia humana de que las reclamaciones válidas se accionan

inmediatamente y no se abandonan". Culebra Enterprises Corp. v. E.L.A., supra, pág. 950.

La controversia ante nos es, en última instancia, la armonización de la relación del término prescriptivo de un año con el período máximo de ocho años durante el cual el Estado puede reservar o congelar una propiedad privada en la consecución de un fin público. En esta medida, se armoniza el término prescriptivo de la acción en daños con el Art. 1869 del Código Civil, 31 L.P.R.A. sec. 5298. Id. Esto es, la parte afectada tiene un año para reclamar la indemnización de los daños ocasionados por la reglamentación sobre su propiedad, contando desde que el Estado libera su propiedad de las restricciones, y como "máximo, se iniciaría después del octavo año de reserva". Culebra Enterprises Corp. v. E.L.A., supra, pág. 956.

El período compensable que establecimos en Culebra Enterprises Corp. v. E.L.A., supra, comienza a transcurrir desde que el Estado, por medio de su reglamentación, impone una clasificación o condición a la propiedad privada que la restringe indebidamente desde el punto de vista constitucional, lo que activa el derecho a una justa compensación. J.J. Álvarez González, Derecho Constitucional de Puerto Rico y relaciones constitucionales con los Estados Unidos, Bogotá, Ed. Temis S.A., 2009, pág. 666. Así pues, el término prescriptivo de un año para reclamar los daños temporeros que la restricción o reserva del Estado ocasionan al titular de la propiedad comienza desde la fecha en que el Estado por medio libera la propiedad o después

del octavo año desde la actuación del Estado, lo que ocurra primero.

En Velázquez Velázquez v. E.L.A., supra, amparados en Culebra Enterprises Corp., reiteramos el término prescriptivo aplicable tras descartar un período de quince (15) años.

> En ese caso [Culebra Enterprises Corp. v. E.L.A, supra], el Tribunal resolvió que el término prescriptivo de una acción de expropiación inversa por alegadas restricciones a la propiedad por el efecto de una reglamentación sobre zonificación era de un año. Entendió el Tribunal que no había diferencia sustancial entre una incautación física y una mediante reglamentación que justificara establecer términos prescriptivos diferentes para cada una.
>
> L.M. Villaronga, Derecho Constitucional, 64 Rev. Jur. U.P.R. 765, 796-797 (1995).

Éste es el término prescriptivo utilizado para la acción en daños que exige el pago al amparo de la norma constitucional de justa compensación. Id. En los casos de expropiación a la inversa (cuando el dueño insta la acción para "obtener la compensación a que tiene derecho"), a los "tribunales generalmente le aplican las misma normas y principios que rigen la acción de expropiación iniciada por el Estado". Velázquez Velázquez v. E.L.A., supra, págs. 88-89.

El "período prescriptivo de un año para exigir compensación por una incautación temporera por reglamentación [comienza] cuando se libera la propiedad de la restricción o cuando se alcanza el octavo año de reserva". Álvarez González, supra, pág. 666. Ante esto, es forzoso concluir que la acción de daños por incautación temporal prescribirá, como máximo, a los nueve años desde la reserva, reglamentación o acción del Estado. Nuestra

Asamblea Legislativa diseñó este período mediante la Ley Núm. 46, supra, al regular el proceso de congelación o reserva de una parcela por parte del Estado.

El período dispuesto por la Ley Núm. 46, supra, comienza a transcurrir desde la "afectación". Art. 3 de la Ley 46, supra. Dicha afectación ocurre con la denegación de todo uso productivo con el plan establecido por el Estado. Respecto al caso que nos ocupa, la "afectación" ocurre con el "plan vial adoptado por la Junta de Planificación, o porque los terrenos han sido destinados para uso público en un mapa de zonificación o plan de uso de terreno". Art. 2, Ley Núm. 46, supra. La "reserva" es la "actuación de un organismo gubernamental competente mediante la cual separe terrenos privados para fines públicos". Id. Por otro lado, el período prescriptivo de un año para la acción en daños que establecimos en Culebra Enterprises Corp. v. E.L.A., supra, comienza a contar desde que la propiedad se libera, pero hasta un máximo "del octavo año de reserva". Culebra Enterprises Corp. v. E.L.A., supra, pág. 956. Véanse además, Muñoz Nazario, supra, págs. 28-30; L.M. Villaronga, Derecho Constitucional, 66 Rev. Jur. U.P.R. 391, págs. 392-401 (1997).

### III

Es preciso aclarar que la sentencia parcial que concedió el interdicto permanente no es la controversia que tenemos ante nuestra consideración. Esta controversia fue resuelta mediante sentencia parcial. El Estado levantó la defensa de prescripción frente a la acción en daños, con independencia del interdicto permanente dictado. La sentencia parcial se limitó a la demanda

interdictal y a la sentencia declaratoria y transfirió a una sala ordinaria la acción en daños. Así pues, para efectos de la doctrina de cosa juzgada, no hay incongruencia entre la sentencia que hoy tenemos ante nuestra consideración y la sentencia parcial concediendo el interdicto porque son acciones diferentes.

Para resolver este recurso es necesario determinar la fecha en que se realizó la alegada "reserva" o incautación que afectó sustancialmente el uso de la propiedad en cuestión. Esta fecha es esencial para poder fijar el plazo prescriptivo de un año para la acción en daños. Según discutimos antes, este período comienza a contar desde que se libera la propiedad de la restricción impuesta por el Estado o desde que transcurren ocho años después de la "reserva" o reglamentación, lo que ocurra primero. Véase, <u>Culebra Enterprises Corp. v. E.L.A.</u>, <u>supra</u>.

Es preciso auscultar en este caso cuándo ocurrió la incautación o "reserva" para determinar entonces desde qué fecha comenzó a contar el plazo de un año de prescripción. Para 1976, aunque la C.R.U.V. era propietaria del predio objeto de este recurso, la Junta de Planificación zonificó este predio como Distrito "P". Según las alegaciones de Plaza de Descuento, esta clasificación fue la que constituyó la incautación de su propiedad. Según se desprende de la propia Ley Núm. 46, <u>supra</u>, la alegada reserva en este caso ocurrió cuando la Junta de Planificación destinó los terrenos para uso público al establecer la zonificación Distrito "P".

Plaza de Descuento radicó su acción en el 2003, esto es, casi 30 años después de la reserva. Como explicamos anteriormente, el período prescriptivo comenzó a contar desde la reserva (1976) y como no fue liberado en 8 años, es a partir del 1984 que comenzó a transcurrir el año de prescripción. Para el 1985, la causa de acción se encontraba prescrita.[3] Tanto Mueblerías Berríos como Plaza de Descuento conocían las limitaciones impuestas cuando adquirieron la propiedad. Debieron saber, entonces, que la posible acción en daños por las restricciones a la propiedad se encontraba prescrita.

En _Palazzolo v. Rhode Island_, 533 U.S. 606 (2001), el Tribunal Supremo de los Estados Unidos decidió que la incautación reglamentaria no puede ser denegada por el único hecho de que el comprador conocía de la regulación antes de comprar. Es claro que no estamos ante ese supuesto, pues la prescripción que estableció el legislador no prohíbe la acción en daños de los nuevos adquirientes. Ahora bien, toda acción debe ser ejercitada dentro del término prescriptivo dispuesto, ya sea por el dueño original o por un adquiriente posterior. Tanto Mueblerías Berríos como Plaza de Descuento adquirieron a sabiendas de que la posible causa en daños se encontraba prescrita.

El término prescriptivo no cambia por el mero hecho de que el antiguo propietario fuera una entidad creada por el gobierno.

---

[3] Aun si utilizáramos la fecha en que Mueblerías Berríos advino dueño de la propiedad, el resultado sería el mismo porque Mueblerías Berríos adquirió en 1984 la propiedad ya zonificada con una clasificación Distrito "P". Eso nos obliga a concluir que para el 2003 la acción en daños estaba prescrita.

Recordemos que la C.R.U.V. era una corporación pública y como tal, "funciona[ba] como empresa o negocio privado". Pagán *et al.* v. E.L.A. *et al.*, 131 D.P.R. 795, 804-805 (1992). Por su naturaleza, "la C.R.U.V. era una corporación pública, lo cual implica que poseía una personalidad jurídica distinta y separada del Gobierno Central". Id, pág. 807. "La C.R.U.V. [era] una corporación pública con personalidad jurídica propia, separada e independiente del E.L.A., que además goza de capacidad para demandar y ser demandada". Fred y otros v. E.L.A., 150 D.P.R. 599, 607 (2000).

Es evidente que cuando el Estado clasificó el terreno no era el propietario del mismo pues lo era la C.R.U.V., entidad separada e independiente del Estado. Es un error adscribirle la actuación de la Junta de Planificación a la C.R.U.V. La C.R.U.V., en su momento, se vio afectada por las restricciones reglamentarias hechas por la Junta de Planificación. Como toda corporación pública, la C.R.U.V. estuvo sujeta a los términos prescriptivos como cualquier otra persona jurídica distinta al gobierno.

Por ende, no estamos ante una acción que no pudo ser ejercitada pues el derecho le corresponde al dueño de la propiedad que se vio afectado por la actuación del Estado. Cuando Mueblerías Berríos y Plaza de Descuento adquirieron la propiedad ya la acción en daños se encontraba prescrita. Precisamente, la zonificación de la propiedad se hizo constar en la escritura de compraventa, entre Plaza de Descuento y

Mueblerías Berríos, y debió ser uno de los factores tomados en cuenta para pactar el precio.

Este punto de partida para determinar la prescripción es cónsono con lo que la Ley Núm. 46, supra, dispone. Sería un contrasentido afirmar que el término prescriptivo comenzó a contar desde el 1996 cuando Plaza de Descuento adquirió la finca o desde el 2002, fecha en que A.R.Pe. revocó el permiso otorgado. Esto no solamente sería contrario a nuestras pasadas expresiones en Culebra Enterprises Corp. v. E.L.A., supra, y a la ley, sino que convierte esta acción en una imprescriptible.

Si tomáramos como fecha de partida el 1996, fecha en que el último comprador, Plaza de Descuento adquirió la propiedad, bastaría con vender o enajenar la propiedad para crear un período prescriptivo nuevo. De igual forma, no puede sostenerse que la fecha para computar el período prescriptivo es desde el 2002, fecha en que A.R.Pe. revocó el permiso otorgado. La revocación se debió a que Plaza de Descuentos emendó la obra a construirse e hizo de ésta una obra contraria a la reglamentación aplicable. Acoger esta teoría, además de estar en conflicto con el derecho aplicable, haría de esta acción en daños una imprescriptible. Bastaría solicitar un permiso improcedente para crear un término prescriptivo nuevo. Esto se agudiza en situaciones como la del predio que nos ocupa ya que éste fue objeto de varias consultas ante la Junta de Planificación.

Lo contrario iría en contra de la regla general que dispone que los derechos y acciones se extinguen por la prescripción a

menos que la ley haya dispuesto otra cosa. Arts. 1830, 1832, 1838 y 1831 del Código Civil, 31 L.P.R.A. secs. 5241, 5243, 5249 y 5291. Véanse además, M.J. Argañarás, La prescripción extintiva, Argentina, T.E.A., 1966, pág. 35; J. Puig Brutau, Caducidad, prescripción extintiva y usucapión, 3ra ed., Barcelona, Bosch, 1996, págs. 45-52.

No estamos frente a un término prescriptivo que renació, cuestión que ocurre cuando la parte favorecida con la prescripción ganada renuncia a su derecho de invocar dicha defensa. L. Díez-Picazo, La prescripción extintiva, 2da ed., España, Thomson Civitas, 2007, pág. 144. Estos supuestos de renacimiento del derecho ocurren cuando el derecho se encuentra prescrito. Id. También es diferente el caso de la interrupción, pues ésta supone un derecho que se encuentra en curso de prescribir y no ha prescrito. Id. En nuestro caso, la acción en daños prescribió y el Estado no ha renunciado a la prescripción ganada. El Estado no responde a una acción nueva e independiente cada vez que la propiedad se transfiere a otro titular o cada vez que se solicita una autorización gubernamental.

Ni la fecha de adquisición del terreno ni la denegación del uso solicitado por Plaza de Descuento constituyeron la "reserva" que nuestra jurisprudencia y la ley disponen. Procede desestimar la demanda en daños ante la defensa de prescripción levantada por el Estado. Debido a que la causa de acción objeto de este recurso se encuentra prescrita, es innecesario atender la doctrina de daño auto infligido.

IV

Así pues, por los fundamentos antes expuestos, confirmamos la sentencia del Tribunal de Apelaciones, aunque por otro fundamento. Se desestima por prescripción la acción en daños instada por Plaza de Descuentos.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton concurre con el resultado con opinión escrita a la cual se une la Jueza Asociada señora Fiol Matta. La Juez Asociada señora Rodríguez Rodríguez concurre con el resultado sin opinión escrita.


Aida I. Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Plaza de Descuentos, S.E.

    Peticionaria

      v.                   CC-2008-162      Certiorari

Estado Libre Asociado de
Puerto Rico

    Recurrido

Opinión Concurrente emitida por el JUEZ PRESIDENTE SEÑOR HERNÁNDEZ DENTON a la cual se une la JUEZ ASOCIADA SEÑORA FIOL MATTA

San Juan, Puerto Rico, a 23 de abril de 2010.

Concurrimos con el resultado de la Sentencia, pero diferimos de los fundamentos de ésta por no ajustarse al derecho vigente. Específicamente, en la Sentencia emitida en el día de hoy se aplica incorrectamente el término prescriptivo establecido por este Tribunal en Culebra Enterprises Corp. v. E.L.A., 127 D.P.R. 943 (1991) para instar una reclamación de indemnización por incautación reglamentaria. Más aún, los criterios esbozados en la Sentencia obvian la normativa pautada por el Tribunal Supremo federal en Palazzolo v. Rhode Island, 533 U.S. 606 (2001), que es la aplicable cuando se alega que medió una incautación de la propiedad

privada a base de la Enmienda Quinta de la Constitución de los Estados Unidos de América. De esa forma, el Tribunal deja pasar una oportunidad para atemperar el referido término prescriptivo a lo resuelto por el máximo foro federal.

I.

En 1996, Plaza de Descuentos, S.E. (Plaza de Descuentos) adquirió un terreno de parte de Mueblerías Berríos, Inc. (Mueblerías Berríos), quien a su vez había adquirido la propiedad en 1988 mediante subasta pública. El predio de terreno -cuya titularidad original era de la Corporación de Renovación Urbana y Vivienda (C.R.U.V.)[4]- había sido clasificado por la Junta de Planificación en el 1976 como Distrito "P", a petición de la C.R.U.V., para destinarlo a uso público con el propósito de desarrollo

---

[4] La C.R.U.V. se creó mediante la Ley Núm. 88 de 22 de junio de 1957 con el propósito de reorganizar y dirigir los proyectos gubernamentales de vivienda pública y de renovación urbana establecidos a partir de 1938. Véase Exposición de Motivos de la Ley Núm. 88 de 22 de junio de 1957, 1957 Leyes de Puerto Rico 456-58. En su ley habilitadora se estableció que la "Administración [de la C.R.U.V.] deberá consultar a las Comisiones Locales de Planificación respectivas sobre cualquier programa o proyecto local de renovación urbana y vivienda que afecte la respectiva municipalidad". Art. 1.5 de la Ley Núm. 88, *supra*, Leyes de Puerto Rico 459. Por lo tanto, en la creación e implementación de política pública sobre vivienda pública y renovación urbana en el país, la C.R.U.V. debía trabajar conjuntamente con las correspondientes Juntas Locales de Planificación para llevar a cabo proyectos urbanísticos. Además, es pertinente mencionar que la C.R.U.V., que se creó como corporación pública, se adscribió al Departamento de Vivienda mediante la Ley Núm. 97 de 10 de junio de 1972, 3 L.P.R.A. sec. 441 *et seq.*), aunque continuó siendo una corporación pública.

futuro. Esto, pues tenía el propósito de llevar a cabo un desarrollo urbanístico cónsono con la clasificación "P". Esta clasificación, la cual estaba vigente al momento de Plaza de Descuentos adquirir el terreno, conllevaba una restricción a la inversión económica que se podía llevar a cabo en éste, que originalmente fue de $25,000 y posteriormente se aumentó a $35,000.

Así las cosas, Plaza de Descuentos sometió en el 2000 un anteproyecto para el desarrollo de ocho negocios de comida cuyo valor total era de $33,400, por lo que se encontraba dentro del referido límite de inversión establecido por la clasificación "P". Dicho anteproyecto, así como los permisos de construcción, fueron debidamente aprobados por la Administración de Reglamentos y Permisos (A.R.Pe.), pues la agencia entendió que un desarrollo económico como el propuesto en el área se encontraba dentro de los límites de la clasificación "P".

No obstante, Plaza de Descuentos decidió aumentar el valor de la inversión a $38,000, por lo que le informó a A.R.Pe. sobre dicho aumento al proyecto aprobado. A.R.Pe., sin embargo, luego de analizar el cambio, decidió revocar los permisos otorgados, ya que el costo de la inversión sobrepasaba el límite establecido en la clasificación "P".[5]

---

[5] Del expediente se desprende que durante el proceso que comenzó con la notificación de la variación, el Municipio de San Juan retiró su endoso al proyecto

En desacuerdo con las restricciones impuestas a su solar, en el 2003 Plaza de Descuentos presentó una demanda en la cual alegó que el Estado le había incautado su propiedad, pues las restricciones impuestas por la clasificación "P" eliminaron todo uso productivo o beneficio que pudiera tener su terreno. El foro primario concluyó que sí hubo una incautación y ordenó rezonificar el terreno según su mejor uso comercial. Por su parte, el Tribunal de Apelaciones revocó dicho dictamen y resolvió que la causa de acción de Plaza de Descuentos era inmeritoria, porque ésta se auto-infligió el daño por el cual pretendía obtener resarcimiento. Inconforme, Plaza de Descuentos acude ante nos.

Ante estas circunstancias, en el día de hoy el Tribunal resuelve que la causa de acción de Plaza de Descuentos está prescrita, porque el término prescriptivo para instar una acción de daños por incautación reglamentaria comenzó a transcurrir en 1976 cuando el Estado clasificó dicho terreno como "P". A nuestro juicio, el Tribunal debió resolver que dicho término prescriptivo comenzó a transcurrir en 1988, cuando Mueblerías Berríos adquirió el terreno de parte del Estado y sufrió las restricciones impuestas por la clasificación "P". Ello,

---

propuesto y varios grupos vecinales presentaron querellas en contra de éste.

pues el Estado no puede incautarse una propiedad que le pertenece.

En primer lugar, enmarcaremos la controversia en el derecho constitucional aplicable sobre la intervención del Estado con la propiedad privada. Luego, veremos cómo se debe atemperar el término prescriptivo para una acción de daños por incautación reglamentaria con dichos preceptos constitucionales.

II.

El derecho a la propiedad privada está concebido como un derecho fundamental del ser humano dentro de nuestra estructura constitucional. En efecto, la Constitución del Estado Libre Asociado de Puerto Rico prohíbe tomar o perjudicar la propiedad privada para un uso público, a menos que no medie el pago de una compensación justa y se cumpla con el proceso de rigor. Const. E.L.A., Art. II., secs. 7 y 9, L.P.R.A. Tomo 1. A su vez, aunque con un texto menos abarcador que el de nuestra Carta de Derechos, la Enmienda Quinta de la Constitución de Estados Unidos de América prohíbe que el gobierno se incaute de la propiedad privada para destinarla a un uso público sin que medie el pago de justa compensación. Enmda. V, Const. E.E.U.U., L.P.R.A. Tomo 1; Véanse, además, The Original Understanding of the Takings Clause and the Political Process, 95 Colum. L. Rev. 782, 805-06 (1995); J. L. Sax, Takings and the Police Power, 74 Yale L.J. 36, 61 (1964).

Por lo general, la intervención estatal con la propiedad privada se manifiesta mediante el ejercicio del poder de expropiación forzosa. En Puerto Rico, las referidas disposiciones constitucionales regulan esa facultad del gobierno estatal, que es consustancial con su existencia e inseparable de su poder político. A.C.T. v. 780,6141m², 165 D.P.R. 121, 130 (2005); E.L.A. v. Rosso, 95 D.P.R. 501, 536 (1967). No obstante, hay acciones gubernamentales respecto a la propiedad privada que requieren el pago de una compensación aunque no estén ligadas directamente al poder de expropiación. Se trata, específicamente, de determinaciones sobre el ordenamiento y la zonificación de la tierra, así como el control y los usos que se les da a ésta. Estas acciones se fundan en el llamado poder de razón de estado (police power) para promover la salud, la seguridad y el bienestar de la comunidad. Véanse Arenas Procesadas, Inc. v. E.L.A., 132 D.P.R. 593, 603 (1993); The Richards Group v. J.P., 108 D.P.R. 23, 36-39 (1978).

Como hemos expresado reiteradamente, la tarea de deslindar el ámbito de ambos poderes no ha sido sencilla, pues no existe una fórmula exacta que demarque su separación. Así, en Puerto Rico este tipo de caso se atiende en función de dos principios elementales: de una parte, el rol primordial de los estados en el control de la tierra y en los derechos de propiedad, y de otra parte, el

contenido mínimo de garantías que la Constitución de Estados Unidos ha reconocido en este contexto.

Por lo tanto, para resolver correctamente la controversia de autos debe examinarse primeramente la normativa que el Tribunal Supremo federal ha pautado al respecto. Véanse Hampton Development Corp. v. E.L.A., 139 D.P.R. 877, 887-93 (1996); Arenas Procesadas, Inc. v. E.L.A., *supra*, págs. 604-07; Véase, además, S. E. Sterk, The Federalist Dimension of Regulatory Takings Jurisprudence, 114 Yale L. J. 203, 270-71 (2004).

A.

La Enmienda Quinta de la Constitución de Estados Unidos, *supra*, le impone límites tanto al poder de expropiación forzosa como al poder de razón de Estado. En este sentido, se ha resuelto que "aunque la propiedad puede regularse hasta cierto punto, si la reglamentación va demasiado lejos se considerará como una incautación". (Traducción nuestra). Pennsylvania Coal Co. v. Mahon, 260 U.S. 393, 415 (1922); Véase F. I. Michelman, Property, Utility, and Fairness: Comments on the Ethical Foundation of "Just Compensation" Law, 80 Harv. L. Rev. 1165 (1965).

Esencialmente, este criterio requiere sopesar los diversos intereses en pugna para decidir si se debe compensar a una persona por incautación reglamentaria. A tales efectos, en Penn Central Transp. Co. v. City of New York, 438 U.S. 104, 124 (1978), se resolvió que aunque un

reglamento no prohíba *todos* los usos económicos de cierta propiedad, se debe evaluar el carácter de la acción estatal, su impacto económico sobre el propietario y el grado de intervención con sus expectativas razonables de inversión para entonces determinar si ha ocurrido una incautación.

Así, la forma más clara de incautación, sin duda, es aquella en la que el gobierno ocupa físicamente la propiedad privada para su uso. Es decir, la invasión física de una propiedad por parte del gobierno o de un tercero que actúe con su anuencia, es una incautación *per se*. Véase Loretto v. Teleprompter Manhattan C.A.T.V. Corp., 458 U.S. 419, 427 (1982). Del mismo modo, si la reglamentación priva al dueño de *todo* uso productivo o beneficioso de su propiedad también se requerirá el pago de una compensación justa. En esencia, semejante reglamentación se trataría análogamente como una ocupación física y, por ende, como una incautación *per se*. Lucas v. South Carolina Coastal Council, 505 U.S. 1003, 1015 (1992); Agins v. City of Tiburon, 447 U.S. 255, 261 (1980).[6]

---

[6] No obstante, el hecho de que el reglamento impugnado prohíba sólo *algún* uso productivo de la propiedad no impide que su dueño reclame el pago de una compensación justa. Ello es así, pues aun cuando el propietario no pueda ampararse en la regla categórica establecida en Agins y su progenie, puede que prevalezca en un reclamo al amparo del balance de intereses de Penn Central. Véase Lucas v. South Carolina Coastal Council, *supra*, págs. 1019 n.8, 1026-32.

Para llegar a la conclusión de que hubo una incautación reglamentaria se requiere analizar si existe un "nexo esencial" entre la condición impuesta y un interés estatal legítimo. De encontrarse tal vínculo, se debe determinar si la magnitud de los requerimientos guarda una proporción aproximada ("rough proportionality") con el impacto que el proyecto tendría en la sociedad y con la necesidad de obra pública. Dolan v. City of Tigard, 512 U.S. 374 (1994); Véase, además, J. J. Álvarez González, Derecho constitucional de Puerto Rico y relaciones constitucionales con los Estados Unidos, Bogotá, Ed. Temis, 2009, pág. 665.

Por otra parte, la persona afectada por una incautación reglamentaria puede solicitar -mediante una acción de "expropiación a la inversa"- que se libere su propiedad de las limitaciones impuestas y que se le compense por los daños sufridos durante el período en el que se le privó de todo uso productivo. La rezonificación no es, pues, un remedio suficiente en el sentido constitucional. First English Lutheran Church v. County of Los Angeles, 482 U.S. 304, 319 (1987).

Por otro lado, más recientemente, en Palazzolo v. Rhode Island, supra, pág. 626, se cuestionó una regla muy generalizada que le prohibía a todo adquirente o cesionario de una propiedad impugnar la validez de un reglamento si al momento de la compraventa conocía de su existencia. Dicha

regla partía de la premisa de que como el derecho de propiedad está sujeto a la reglamentación estatal, el gobierno puede definir sus contornos y las expectativas razonables de inversión vinculadas a éste a través de medidas prospectivas. Por consiguiente, conforme a la regla cuestionada los que adquirieran un predio de terreno con conocimiento de las limitaciones existentes no podían reclamar un daño por la pérdida del valor que generaran.

Al invalidar dicha regla, el Tribunal Supremo federal resolvió que una zonificación sumamente restrictiva no deja de ser irrazonable por el mero transcurso del tiempo ni por la transferencia del título. En efecto, una norma contraria le concedería al gobierno inmunidad ante cualquier reclamo por una incautación reglamentaria, no importa lo irrazonable o extrema que sea la clasificación impugnada. Por lo tanto, en Palazzolo se pautó que el mero hecho de que una persona haya adquirido un predio de terreno luego de que se aprobara un reglamento urbanístico, no puede impedir que ésta presente una demanda para cuestionarlo por ser equivalente a una incautación. Pese a la obligatoriedad de esta norma en nuestro ordenamiento, la Sentencia del Tribunal la ignora por completo.

Con esta normativa federal en mente, examinemos su relación con el desarrollo jurisprudencial puertorriqueño al respecto. Específicamente, debemos analizar cómo se atempera el término de prescripción para incoar una acción

de indemnización por incautación reglamentaria con la normativa antes discutida.

B.

Según hemos expresado reiteradamente, la prescripción obedece a una clara política pública que procura la solución rápida de las reclamaciones presentadas por los ciudadanos, lo cual abona a la estabilidad de las relaciones sociales y a la seguridad en el tráfico jurídico. Santos de García v. Banco Popular, res. el 13 de diciembre de 2007, 2007 T.S.P.R. 221. Así se previene que el Estado proteja indefinidamente los derechos no reclamados por su titular, pues se presume que las acciones meritorias se presentan de inmediato, no se abandonan. J. Puig Brutau, Caducidad, prescripción extintiva y usucapión, 3ra ed., Bosch, 1996, págs. 31-33; M. Albaladejo, II Derecho Civil, Bosch, 1989, pág. 496.

Como es sabido, en Puerto Rico el término prescriptivo de las acciones de responsabilidad civil extracontractual –en las que, precisamente, se enmarcan los reclamos de daños por la incautación reglamentaria de un predio de terreno– se computa desde el momento en que el agraviado supo del daño o desde el día en que pudo ejercitar su acción. Arts. 1868-69 del Código Civil, 31 L.P.R.A. secs. 5297-5298; Véase, además, Culebra Enterprises Corp. v. E.L.A., *supra*, pág. 955. Asimismo, como regla general, para poder incoar un reclamo por la incautación reglamentaria de una

propiedad el demandante debe acreditar primero su condición de dueño. Esto, pues sólo los poseedores del derecho objeto de la acción gubernamental impugnada pueden exigir la indemnización correspondiente. Véanse <u>Eastern Enterprises v. Apfel</u>, 524 U.S. 498 (1998); <u>Parella v. Retirement Bd. of Rhode Island</u>, 173 F. 3d 46, 58 (1999).

En atención a lo anterior, en <u>Culebra Enterprises Corp. v. E.L.A.</u>, *supra*, pág. 956, resolvimos que el término de prescripción que aplica a las acciones de daños por una incautación reglamentaria es el de un año, contado a partir de que se libere la propiedad de las restricciones impuestas o, como máximo, desde que transcurre el período de reserva de ocho años establecido por ley para solicitar esa liberación. Véase 32 L.P.R.A. sec. 2923 *et seq*. Amparado en esta norma, en el caso de autos el Tribunal resuelve que como la parcela se reservó para un fin público en 1976, la causa de acción de Plaza de Descuentos estaba prescrita al presentar su demanda en el 2003. Esto es, que la causa de acción prescribió en 1984 cuando finalizó el referido período de ocho años. Discrepamos de dicha conclusión. Veamos por qué.

III.

Plaza de Descuentos alega que el Estado le incautó reglamentariamente su propiedad en el momento en el que le revocaron los permisos, pues las restricciones que se impusieron en 1976 cuando se clasificó el terreno como "P"

le privaron de todo uso productivo o beneficio económico en el terreno. Por su parte, el Procurador General arguye que la causa de acción está prescrita, pues el término de prescripción para ésta comenzó a transcurrir en 1976, cuando el Estado congeló o reservó dicho predio de terreno para uso público según le fue peticionado por la C.R.U.V.

Según señalamos en Culebra Enterprises Corp. v. E.L.A., *supra*, pág. 956, el término para instar una reclamación de daños por incautación reglamentaria comienza a transcurrir, de ordinario, desde que se libera la propiedad de las restricciones o, como máximo, después del octavo año de reserva o congelación del terreno. Sin embargo, no se puede aplicar esta norma mecánicamente, como se hace en la Sentencia del Tribunal. En 1976 el titular del terreno clasificado como "P" era la C.R.U.V., que era una corporación pública del Estado, la cual se disponía a llevar a cabo un proyecto acorde con dicha clasificación. Ante esa realidad, no cabe hablar de una incautación reglamentaria que haya provocado un daño desde 1976, pues fue el Estado, a través de la C.R.U.V., quien utilizó el mecanismo de rezonificación para reservar ese terreno para uso público, cuando ésta era la propietaria del mismo. El concluir que el término en controversia comenzó a transcurrir en 1976 implica avalar la teoría de que el Estado, al zonificar un terreno como "P", se auto-provocó una incautación reglamentaria a sí mismo.

No fue hasta 1988 cuando el Estado le transfirió la titularidad del terreno en controversia a Mueblerías Berríos, una entidad privada que deseaba llevar a cabo negocios en el área. Durante los años en que Mueblerías Berríos fue la titular del terreno, la Junta de Planificación le concedió variaciones a los proyectos propuestos, sujeto al debido cumplimiento de varias condiciones acordes con la clasificación "P". No obstante, Mueblerías Berríos nunca realizó ningún proyecto comercial en ese terreno, por lo que lo vendió en 1996 a Plaza de Descuentos por la suma de $392,000.

Por lo antes dicho, entendemos que el término de prescripción para incoar la acción de indemnización por incautación reglamentaria en este caso comenzó a transcurrir cuando Mueblerías Berríos advino propietaria del terreno clasificado como "P". Fue en 1988 cuando Mueblerías Berríos sufrió los posibles daños por las restricciones que una clasificación "P" le impone a un terreno clasificado como tal. Es en ese momento que comenzó a transcurrir el término prescriptivo de un año a partir de la liberación del terreno de parte del Estado, o, como máximo, un año a partir del octavo año que tiene como límite temporal el Estado para congelar o reservar una propiedad para uso público. Por lo tanto, si el término prescriptivo comenzó en 1988, y la clasificación del terreno continuó siendo "P", éste finalizó en 1997, un año

luego de los ocho años máximos que puede utilizar el Estado para congelar o reservar una propiedad privada.

Adviértase que a pesar de que la Sentencia del Tribunal concluye que el término prescriptivo comenzó a transcurrir en 1976, reconoce nuestra postura como alternativa en la nota al calce número tres. Ello es muestra de una ambivalencia en el proceder del Tribunal, lo que seguramente creará confusión entre la comunidad jurídica y resultará en detrimento del estado de derecho.

Por otro lado, con su proceder en el día de hoy este Tribunal dejó pasar una oportunidad para atemperar el término prescriptivo establecido en Culebra Enterprises Corp. v. E.L.A., *supra*, con la normativa obligatoria pautada por el Tribunal Supremo de Estados Unidos en Palazzolo v. Rhode Island, *supra*. Específicamente, en la Sentencia de este Tribunal se resuelve que el Estado no debe estar sujeto a responder a una acción nueva e independiente cada vez que la propiedad se transfiere a otro titular o cada vez que se solicita una autorización gubernamental. No obstante, según resolvió el Supremo federal en Palazzolo v. Rhode Island, *supra*, el mero hecho de que una persona haya adquirido un predio de terreno luego de que se aprobara un reglamento urbanístico, no puede impedir que ésta presente una demanda para cuestionarlo por ser equivalente a una incautación.

Si imbricamos esta normativa al término prescriptivo para acciones de indemnización por incautación reglamentaria de nuestro ordenamiento, es forzoso concluir que, contrario a lo que preceptúa la Sentencia del Tribunal, independientemente de cuántas veces se haya transferido el título de propiedad del terreno durante el término prescriptivo, un adquirente posterior de la titularidad del bien está tan facultado como su titular al momento de la incautación reglamentaria para presentar una acción de este tipo. Ello, claro está, siempre que la acción se inste dentro del referido período prescriptivo.

En el caso de autos es evidente que el término prescriptivo no terminó en 1984, cuando todavía el Estado era dueño de esos terrenos, sino en 1997, luego de un año a partir del octavo año que el Estado tiene como límite para mantener una propiedad privada congelada para un fin público. Así, Plaza de Descuentos, quien recibió la titularidad del bien con la clasificación "P" en 1996, tuvo aproximadamente un año para presentar una acción de daños a base de una incautación reglamentaria. Al presentar la acción en el 2003, es evidente que ya el término prescriptivo para impugnar una clasificación que limita las facultades del titular desde 1988 había finalizado. Por ende, la causa de acción presentada por Plaza de Descuentos resulta tardía, según hemos fundamentado anteriormente.

IV.

Según la discusión doctrinal antes analizada, somos del criterio que la Sentencia emitida por el Tribunal se basa en fundamentos erróneos e imprecisos para llegar a la conclusión de que la causa de acción presentada por Plaza de Descuentos está prescrita. Más importante aún, con su proceder el Tribunal se mantiene al margen de la normativa federal aplicable cuando se invoca una violación a la Enmienda Quinta de la Constitución de los Estados Unidos a base de una incautación reglamentaria en un terreno privado. Por ello, nos vemos obligados a concurrir.

Federico Hernández Denton
Juez Presidente