Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
Panel II

| | | |
|---|---|---|
| YOEL ORTIZ RIVERA<br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE DESARROLLO ECONÓMICO Y COMERCIO OFICINA DE GERENCIA DE PERMISOS (OGPE)<br>Recurrido | KLRA202300650 | *Revisión Judicial* de decisión administrativa procedente del Municipio de Toa Baja<br><br>Caso Núm. 2022-467945-CCO-011764<br><br>Revisión Núm. 2022-467945-SDR-013017<br><br>Sobre: Consulta de construcción |

Panel integrado por su presidente, el Juez Bermúdez Torres, el Juez Adames Soto y la Juez Aldebol Mora

Adames Soto, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 8 de marzo de 2024.

Comparece el señor Yoel Ortiz Rivera (señor Ortiz Rivera o recurrente), solicitando la revocación de la *Resolución de Revisión Administrativa* emitida por la División de Revisiones Administrativas (DRA) de la Oficina de Gerencia de Permisos (OGPe), el 17 de noviembre de 2023. Mediante dicho dictamen, se confirmó una determinación de la OGPe declarando *No Favorable* la solicitud sobre *Consulta de Construcción* presentada por el recurrente, con la que procuraba legalizar la construcción de cierto proyecto.

Tras examinar los escritos presentados por las partes, y los documentos suplementarios adjuntos, decidimos confirmar la determinación recurrida.

NÚMERO IDENTIFICADOR

SEN2024_____

## I. Resumen del tracto procesal

El 19 de enero de 2023, el señor Ortiz Rivera, presentó una solicitud de consulta de construcción ante la OGPe. Tenía como propósito tal petición legalizar la construcción de cuatro apartamentos, de dos habitaciones, sala-comedor, cocina y un baño cada uno, en una residencia unifamiliar de dos plantas, localizada en el Municipio de Toa Baja. Dicho predio está calificado como Residencial Intermedio (R-I), según el Mapa de Calificación de Suelos del Municipio de Toa Baja.

A partir de la referida solicitud, la OGPe le requirió al recurrente una serie de documentos para completar el proceso de validación iniciado. Entre otros asuntos señalados por la OGPe, fue indicado que el proyecto consultado no cumplía con los espacios de estacionamiento necesarios, pues se requerían seis, pero se proponían cinco, y estos salían en retroceso a la vía. Esto dio lugar a que el recurrente supliera información para demostrar la legalidad de lo proyectado.

Entonces, el 2 de febrero de 2023, la OGPe subsanó la consulta de construcción, dando lugar a que, el 16 de febrero de 2023, el recurrente presentara un plano enmendado en el que ilustraba la estructura cuyo permiso solicitaba.

En el proceso de subsanar señalamientos de la OGPe relacionados al permiso solicitado, el 24 de marzo de 2023, esta le requirió al recurrente la siguiente documentación: Certificación del Proyectista firmada y sellada (Secc. 2.1.9 del Reglamento Conjunto); Licencia del Proyectista (Dpto. de Estado) vigente (Secc. 2.1.9); Tabla de Parámetros enmendada para incluir la altura total del edificio, tamaño y cantidad de los estacionamientos compactos, (en el Plano de Situación solo se habían provisto 5 espacios). Asimismo, se le solicitó al recurrente enmendar la descripción del porcentaje de área bruta del piso total mediante memorial explicativo, y justificar las variaciones de estacionamiento en cuanto al tamaño,

cantidad de estacionamientos compactos y área de viraje en retroceso de vía. De igual forma, se le solicitó la dirección postal del proyectista para hacerle llegar las notificaciones correspondientes, de conformidad con la Sección 3.1.3.2 del Reglamento Conjunto.

El 19 de abril de 2023, en respuesta a la documentación solicitada por la OGPe, el recurrente sometió un tercer memorial explicativo indicando lo siguiente:

"En cumplimiento con la 3ra subsanación:

1. La certificación de proyectista según solicitada está incluida.

2. En cuanto a la certificación de la junta examinadora estamos a la espera.

3. En cuanto a la tabla comparativa de parámetros, la misma ha sido corregida, en cuanto a porcentaje de área bruta de piso total (5.17m), referente a los estacionamientos en la hoja HT-1 (Enm marzo) se ilustran los 6 espacios.

4. En cuanto a justificar las variaciones de estacionamiento:

   1. Tamaño – 4.0 x 2.59, para cada estacionamiento vehículo compacto;

   2. Cantidad – En la HT-1 (Enm marzo) se ilustran 6 espacios para estacionamientos, en las fotografías incluidas se puede observar que los vehículos estacionados son compactos;

   3. Viraje y/o Retroceso a la vía – En las mismas fotografías se puede observar que no hay problema alguno de entrada y salida hacia la vía de rodaje, a su vez no afecta el paso a transeúntes por la acera;

   4. Dirección Postal del Proyectista – Carr. 693 PMB 370, Dorado, PR 00646.

La legalización de estos apartamentos minimiza la situación de vivienda en el área para personas que están en busca de vivienda, para estar cerca de familiares."

El 15 de marzo de 2023, la Oficina de Planificación y Ordenación Territorial del Municipio Autónomo de Toa Baja emitió sus comentarios de *No Objeción* al proyecto.

Por su parte, el 25 de mayo de 2023, la OGPe emitió una *Resolución* de *No Favorable* a la solicitud de consulta de construcción[1]. Habiendo advertido que el proyecto propuesto fue tramitado como una *Consulta de Construcción,* porque proponía variaciones a los parámetros de construcción aplicable, explicó que la negativa a la concesión del permiso solicitado tuvo como fundamento, en síntesis, que dicho proyecto; *presenta variaciones muy intensas considerando que ubica en un área residencial unifamiliar. Así mismo, presenta variaciones que no fueron solicitadas ni justificadas, según se desprende de las Determinaciones de Hecho. El proyecto propuesto no cumple con el Código Civil de PR en cuanto a luces y vistas (Art. 807), ni con el código de construcción en cuanto a iluminación y ventilación (Residential Code 2018)[2].* En la *Resolución* fue precisada la información presentada por el recurrente para tratar de cumplir con las exigencias reglamentarias levantadas por la OGPe, (con el propósito de justificar las variaciones que proponía), y la documentación no provista, según el criterio de la agencia administrativa.

Inconforme, el recurrente presentó una solicitud de revisión administrativa ante la DRA de la OGPe. Una vez fue acogida dicha solicitud para revisión ante la DRA, esta pautó vista en la que se dilucidarían los asuntos concernientes, el 29 de agosto de 2023.

Llegada la fecha de la vista pautada, a esta compareció el recurrente, junto a dos testigos, y la licenciada Rosas Negrón en representación de la OGPe. Iniciada la vista, fue presentado el testimonio del recurrente Yoel Y. Ortiz Rivera, el de la Sra. Grisell Pagán Colón, empleada de la firma *Adal Group and General Contractors*, como oficial administrativa de documentos y de trámite del caso, y el testimonio del Sr. Jesús M. Valle Martínez. Luego de considerar la prueba que estuvo ante su atención la DRA, esta

---

[1] Apéndice VI del recurso de revisión judicial, págs. 27-42.
[2] Recurso de revisión judicial, Apéndice VI, pág. 40.

emitió la *Resolución de Revisión Administrativa*[3] cuya revocación nos solicita el recurrente, declarando No Ha Lugar la solicitud de revisión administrativa, por tanto, confirmando la determinación de la OGPe que no autorizó el permiso de construcción solicitado por el recurrente. Al así decidir, el foro administrativo formuló veintitrés determinaciones de hechos, más la aplicación del derecho correspondiente. En definitiva, dicho órgano administrativo revisor determinó confirmar a la OGPe al denegar el permiso solicitado, ratificando así que: el uso solicitado era uno intenso, proponiéndose cuatro apartamentos en una propiedad en la que no existen las condiciones físicas para cumplir con las disposiciones reglamentarias, conllevando variaciones en el área de ocupación, densidad poblacional y patio lateral derecho; además de no proveer los espacios de estacionamiento requeridos, sin afectar el tránsito peatonal en las aceras y el tránsito vehicular, ni cumplir con los requisitos reglamentarios pertinentes.

En desacuerdo, el 18 de diciembre de 2023, el recurrente acudió ante nosotros, mediante el presente *recurso de revisión judicial,* haciendo los siguientes señalamientos de errores:

> Erró OGP al crear e implantar reglamentaciones excesivas que en efecto anulan el derecho constitucional a la propiedad privada queriendo imponer el diseño de una casa existente en su exterior y específicamente en el interior de la residencia.

> Erró OGP al no permitir las variaciones necesarias en una urbanización construida hace décadas y cuyo tamaño en metros cuadrados hace imposible tener seis estacionamientos y donde toda la urbanización tienen escaleras laterales similares a las de la casa del apelante.

> Erró OGP al permitir como proyectista a una persona que no rendía las credenciales para ser ingeniero proyectista en este y que no compareció a la vista administrativa.

---

[3] Recurso de revisión judicial, Apéndice 1, págs. 1-14.

**II. Exposición de Derecho**

   **A. Revisión judicial de determinaciones administrativas**

La Ley Núm. 38-2017, Ley de Procedimientos Administrativos Uniforme del Gobierno de Puerto Rico, (LPAU), 3 LPRA sec. 9601 *et seq.*, crea un mecanismo de revisión judicial para *aquellas órdenes, resoluciones y providencias adjudicativas finales dictadas por agencias o funcionarios administrativos*. 3 LPRA sec. 9671. Dentro de este esquema, tal estatuto establece las pautas que los tribunales apelativos debemos seguir a la hora de revisar las adjudicaciones finales administrativas. Respecto a las determinaciones de hechos, en el mismo estatuto se indica que *serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo*. 3 LPRA sec. 9675. Por tanto, las determinaciones de hechos formuladas por las agencias no deben ser alteradas por los tribunales revisores, si éstas se fundamentan en suficiente evidencia que surja del expediente. *Rivera Concepción v. ARPe* 152 DPR 116, 123 (2000).

Relacionado con lo anterior, *evidencia sustancial* es aquella que una mente razonable aceptaría como adecuada para sostener una conclusión. *Otero v. Toyota*, 163 DPR 716, 728 (2005). Quiere decir que, **la persona que impugne las determinaciones de hechos de una agencia deberá convencer al tribunal de que la evidencia en la cual se apoyó esta no sostiene tales determinaciones**. (Énfasis provisto). *Íd.* En la medida que la parte afectada no demuestre la existencia de esa otra prueba que sostenga que las determinaciones no se apoyan en evidencia sustancial o que menoscabe el valor de la evidencia impugnada, los tribunales debemos sostener las determinaciones de hechos. *Íd.*

La exigencia de que las determinaciones de hechos, y la consecuente adjudicación, se basen en evidencia que surja del expediente no es una mera formalidad. Por el contrario, es una exigencia imperativa del derecho

de toda persona a únicamente ser privada de su libertad y propiedad mediante un debido proceso de ley. Const. P.R., Art. II, Sec. 7. De esta manera, que la adjudicación esté basada en el récord, es una parte integral del debido proceso de ley en su vertiente procesal. *Román Ortiz v. Oficina de Gerencia de Permisos*, 203 DPR 947, 954 (2020). No obstante, si bien, las agencias no vienen obligadas a observar la misma rigidez que los tribunales respecto al debido proceso de ley, sus procesos adjudicativos deben ser justos en todas sus etapas y tienen que ceñirse a las garantías mínimas del debido proceso de ley. *Íd.*

En cuanto a las conclusiones de derecho, se sabe que la mismas *serán revisables en todos sus aspectos por el tribunal. Román Ortiz v. Oficina de Gerencia de Permisos*, 203 DPR 947, 954 (2020). Ahora bien, respecto a las conclusiones de derecho de las agencias, si bien estas son revisables en todos sus aspectos, los tribunales apelativos no debemos descartarlas libremente, sustituyéndolas con nuestros propios criterios. *Misión Ind. PR v. JP*, 146 DPR 64, 132 (1998). El criterio que el tribunal utilizará es uno de razonabilidad, **sosteniendo las conclusiones en la medida que la agencia no haya actuado arbitraria o ilegalmente**. (Énfasis provisto). *Misión Ind. PR v. JP*, supra, pág. 134. Al llegar a un resultado distinto que el obtenido por la agencia, el tribunal revisor debe determinar si la divergencia responde a un ejercicio razonable de la discreción administrativa. *Misión Ind. PR v. JP*, supra, págs. 134-35. Esta discreción puede estar fundamentada **en una pericia particular**, consideraciones de política pública o en la apreciación de la prueba. (Énfasis provisto). *Íd.* Por tanto, si la decisión carece de base racional, entonces el tribunal podrá sustituir su criterio por el de la agencia. *Íd.*

En este punto, es preciso recordar que los tribunales estamos llamados a concederles amplia deferencia a las agencias administrativas. *Moreno Lorenzo y otros v. Depto. Fam.*, 207 DPR 833 (2021); *Graciani*

*Rodríguez v. Garage Isla Verde, LLC,* 202 DPR 117, 126 (2019); *Comisionado de Seguros de Puerto Rico v. Corporación para la Defensa del Poseedor de Armas de Puerto Rico, Inc.,* 202 DPR 842, 853 (2019). Ello, en vista de que los organismos administrativos cuentan con la experiencia y conocimiento especializado en los asuntos que les han sido encomendados. *Moreno Lorenzo y otros v. Depto. Fam.,* supra; *OCS v. Universal,* 187 DPR 164, 178 (2012); *The Sembler Co. v. Mun. de Carolina,* 185 DPR 800 (2012).

Sin embargo, la norma expresada en el párrafo que antecede no es absoluta, ni nos impide revisar determinaciones administrativas que no estén basadas en evidencia sustancial, cuando el organismo incidió en aplicar la ley o cuando la actuación de la agencia haya sido arbitraria, irrazonable o contraria a derecho. *Moreno Lorenzo y otros v. Depto. Fam.*, supra; *The Sembler Co. v. Mun. de Carolina,* supra, pág. 882; *Otero v. Toyota,* 163 DPR 716, 729 (2005).

Se añade a lo hasta aquí discutido, que el Art. 4.5 de la LPAU, 3 LPRA sec. 9675, dispone que la revisión judicial se circunscribe a analizar: (1) si el remedio concedido fue razonable; (2) si las determinaciones de hechos están sostenidas en evidencia sustancial que obre del expediente administrativo, y (3) si se sostienen las conclusiones de derecho realizadas por la agencia. *Moreno Lorenzo y otros v. Depto. Fam.,* supra. Por el contrario, el abuso de discreción se manifiesta cuando el juzgador (1) no toma en cuenta e ignora, sin fundamento, un hecho material; (2) le concede gran peso y valor, sin fundamento, a un hecho irrelevante e inmaterial; y (3) cuando, no obstante considerar y tomar en cuenta los hechos materiales, los sopesa y calibra livianamente. *Pueblo v. Ortega Santiago,* 125 DPR 203, 211-12 (1990).

### B. Ley 161-2009, el Convenio y el Reglamento Conjunto

La Ley para Reforma del Proceso de Permisos de Puerto Rico, Ley Núm. 161-2009, (Ley 161), 23 LPRA sec. 9011, fue aprobada con el fin de proveer el marco legal administrativo integrado del Gobierno de Puerto Rico para regir los procesos de solicitud, evaluación, concesión y denegación de permisos de uso, construcción y desarrollo de terrenos en Puerto Rico. *Horizon v. Jta Revisora, RA Holdings*, 191 DPR 228, 236 (2014). Mediante dicha ley se creó una serie de organismos para manejar los diversos aspectos del proceso de permisos, y entre estos la OGPe. Por disposición del estatuto bajo discusión, la OGPe está llamada a la evaluación de la concesión o denegación de los permisos relativos al desarrollo y el uso de terrenos en Puerto Rico. *Cordero et al. v. ARPe et al.*, 187 DPR 445, 458 (2012). Según fue plasmado en la Ley 161, con la creación de la referida estructura gubernamental se procuró *implementar un nuevo sistema, cimentado en un enfoque moderno, transparente, confiable, ágil y eficiente que fomentará el desarrollo integral, sostenible, económico, social y físico que Puerto Rico necesita para sobrepasar la crisis actual a la vez que se alcanzará y mantuviese la competitividad de una economía de primera*. Artículo 2.1 y 2.5 de la Ley 161, 23 LPRA secs. 9012-9012d.

Al amparo del mismo estatuto se aprobó el Reglamento Conjunto.[4] El mismo establece en la Sección 6.1.3.1, que el propósito de un Distrito R-I es identificar las áreas residenciales desarrolladas o que puedan desarrollarse y en donde se permitirán diferentes tipos de viviendas. Cónsono con eso, entre los usos residenciales permitidos en este tipo de distrito la Tabla 6.32 de la Sección 6.1.3.2 dispone que se encuentran: las

---

[4] Junta de Planificación, Reglamento Conjunto para la evaluación y expedición de permisos relacionados al desarrollo, uso de terrenos y operación de negocios. Núm. 9473 (16 de junio de 2023) https://docs.pr.gov/files/DDEC/OGPe/Reglamentos/RC-2023-E.pdf.

residencias unifamiliares; las segundas plantas; las micro casas; las casas patios; las casas en hileras y las casas de apartamentos.

A tales efectos, los diseños de los inmuebles deben cumplir con unos parámetros específicos cuyo propósito es poder establecer las cualidades, características e intensidades para los usos o actividades particulares a permitirse. Sección 6.1.1.11 del Reglamento Conjunto.

Por otro lado, la Sección. 6.3.2.1 del Reglamento Conjunto para la evaluación y expedición de permisos relacionados al desarrollo, uso de terrenos y operación de negocios no son aquellas que van dirigidas a alterar el uso permitido en un distrito. En cambio, van dirigidas a dispensar al propietario del cumplimiento de uno o más de los requisitos que establece el Reglamento Conjunto para la zona o distrito de calificación en la cual se encuentre el inmueble en cuestión. Ahora bien, toda variación debe ser solicitada por el dueño de la propiedad o por un representante autorizado a través de un escrito en el cual señale los motivos, fundamentos y razones en apoyo de su solicitud. Secc. 6.3.1.3 del Reglamento Conjunto.

En cuanto a las condiciones que la OGPe tomará en consideración para otorgar variaciones, la Sección 6.3.2.3 del Reglamento Conjunto dispone que:

a. El Secretario Auxiliar de la OGPe, los Municipios Autónomos con Jerarquía de la I a la III, a los cuales se le haya delegado dicha facultad por medio del Convenio de Transferencia, autorizará variación en construcción, lotificación u otras para los usos que tolera el distrito tomando en consideración, entre otros, los siguientes factores:

1. El solar tenga una condición particular que no permite que se cumpla con las disposiciones de este Reglamento.

2. El solar tenga una ubicación especial o el uso particular confronta una dificultad práctica y amerita una consideración especial.

3. La variación solicitada no perjudica propiedades vecinas, la disponibilidad de infraestructura y el ambiente del vecindario.

4. No se afecte el uso agrícola, la productividad agrícola de los terrenos, los recursos naturales, históricos o culturales existentes, si alguno.

5. Para variar los parámetros de construcción sobre densidad e intensidad, el uso propuesto deberá ser uno contemplado en el distrito en que ubica.

6. La magnitud de la variación es la necesaria para asegurar la viabilidad del uso permitido y no es viable considerar otras alternativas para salvar el problema presentado.

b. En las Áreas de Planificación Especial, el Secretario Auxiliar de la OGPe especificará la naturaleza y extensión de las variaciones en construcción u otras variaciones y también prescribirá aquellas condiciones que a su juicio son necesarias para asegurar el cumplimiento de los criterios que se establecen en esta Sección.

c. Las variaciones autorizadas quedarán sujetas al cumplimiento de las condiciones que se establezcan y a las demás disposiciones de ésta o de cualquier otra reglamentación aplicable.

d. El incumplimiento de cualquiera de dichas condiciones constituirá una violación a este Reglamento y podría constituir base suficiente para la revocación de la variación en todas sus partes.

De igual forma, el Reglamento dispone en su Sección 6.3.2.4 que no podrá utilizarse una variación en construcción, lotificación u otras, en todo o en parte, a menos que:

a) Que la variación sea necesaria para la preservación y el disfrute de un derecho de propiedad y se demuestre que la variación aliviará un prejuicio claramente demostrable.

b) Que la autorización de tal variación no afectará adversamente el disfrute y valor de las pertenencias cercanas en el uso presente y para cualquier otro uso futuro permitido.

c) Que el peticionario, a su vez, está en disposición de aceptar las condiciones y requisitos adicionales a los requisitos reglamentarios que el Secretario Auxiliar de la OGPe o Municipio Autónomo con Jerarquía de la I a la III le imponga para beneficio o protección del interés público.

d) Solicitar comentarios a la Unidad de Hidrogeología de la JP en áreas propensas a inundaciones o a deslizamientos de terrenos.

e) No afecte la integridad ecológica de la Reserva Agrícola, Natural, Áreas de Planificación Especial o se ocasione

peligro a los recursos naturales, históricos, culturales o agrícolas existentes.

Por otro lado, debemos abordar lo establecido en el Reglamento sobre los parámetros de diseño para el distrito R-I. El mismo se establece con precisión en la Sección 6.1.3.4 del Reglamento y establece que **el área máxima de ocupación de una construcción debe ser de 60%**. Sobre la provisión de espacios de estacionamiento destacamos que el Capítulo 8.5.1, relacionado a la provisión de espacio para el estacionamiento de vehículos, establece que:

a. Las áreas de estacionamiento de vehículos de motor requeridas serán provistas dentro de la pertenencia, bien sea el edificio principal, en un edificio accesorio o en un área remanente del solar en que está ubicado o ubicará dicho edificio principal.

[…]

c. Al utilizar el solar de acuerdo con las disposiciones de ocupación para el distrito de calificación en que ubique la pertenencia, no se puede proveer el área de estacionamiento en terrenos del solar y se demuestre a la OGPe o el Municipio Autónomo con Jerarquía de la I a la III que su provisión no es factible con relación al proyecto, éste podrá autorizar la provisión de tal área de estacionamiento en otro predio localizado a una distancia de fácil recorrido a pie de no más de doscientos (200) metros del solar, siempre que se haga la dedicación de la totalidad de dicho predio para área de estacionamiento mediante el documento legal correspondiente.

d. La OGPe o el Municipio Autónomo con Jerarquía de la I a la III no dispensará de cumplir con el total de los espacios de estacionamientos requeridos, excepto dentro de los centros urbanos tradicionales de los municipios, según delimitados en los mapas de calificación.

[…]

s. Los requisitos sobre espacio de estacionamiento a proveerse para cualquier uso no incluido en las secciones que siguen o de surgir alguna actividad no contemplada en esta Sección, la OGPe o el Municipio Autónomo con Jerarquía de la I a la III, determinarán el número de estacionamientos necesarios basados en los parámetros aquí establecidos para otros usos similares

Asimismo, la Regla 8.5.2, relacionada al diseño y requisitos mínimos de áreas de estacionamiento, en su sección 8.5.2.1 dispone:

a. Las áreas de estacionamiento de vehículos se diseñarán en forma funcional, esto es, para que cualquier vehículo pueda moverse sin que se vea impedido de hacerlo por otros vehículos estacionados, a menos que ello se disponga así en este Reglamento, ni obligado a entrar en el tránsito en retroceso.

b. Estas áreas serán pavimentadas, marcadas, provistas de accesos, tendrán una circulación adecuada para peatones y vehículos y contarán con áreas de siembra.

c. No se permitirá que se utilicen las vías públicas y los accesos a áreas de estacionamiento como áreas de viraje.

d. El diseño incorporará lo siguiente:

1. **Pavimentación**- Todas las áreas de estacionamiento tienen que nivelarse y pavimentarse con algún material permanente y/o permeable.

2. **Marcas**- Cada uno de los espacios de estacionamiento será designado marcando el pavimento del área de estacionamiento con pintura u otro material indeleble.

3. **Accesos**- Se proveerán accesos seguros y eficientes desde las vías públicas a las áreas de estacionamiento y desde los espacios de estacionamiento hacia las vías internas que conducen a las vías públicas. No se permitirán estacionamientos con salidas en retroceso a vías públicas.

4. **Barreras de Detención**- En los bordes de las áreas pavimentadas (excepto en las entradas y salidas) se construirán barreras de detención ("wheel stops") de mampostería, acero u hormigón, de por lo menos seis (6") pulgadas de altura, a fin de impedir que los vehículos irrumpan en las aceras, en las propiedades adyacentes o en las áreas que hayan recibido tratamiento paisajista.

5. **Iluminación**- Si se utiliza sistema de alumbrado, la iluminación se dirigirá hacia el área de estacionamiento, evitando que la luz brille sobre las propiedades públicas y privadas adyacentes. En edificios de estacionamiento que colinden con un distrito residencial se proveerán barreras de iluminación a fin de impedir que las luces de los vehículos se proyecten hacia las propiedades residenciales adyacentes. En lugares donde exista vegetación que interfiera con la iluminación, las luminarias deberán ubicarse de forma tal que se proteja la seguridad de los usuarios.

6. **Verjas-** En los distritos residenciales se limitará la visibilidad del estacionamiento desde la primera planta de los solares colindantes y desde la acera. Se proveerán

verjas ornamentales con setos vivos y vegetación apropiada en las colindancias y a lo largo de la línea de la vía.

e. Los estacionamientos de vehículo de motor en distritos turísticos R-T y C-T cumplirán con lo siguiente:

1. Para los usos residenciales se requerirá estacionamiento para visitantes de acuerdo a un (1) estacionamiento por cada cinco (5) unidades de vivienda.

2. No se permitirá estacionamiento en el patio delantero.

3. Se limitará la visibilidad del estacionamiento en el patio delantero.

f. Toda estructura de estacionamiento en distrito C-T deberá cumplir a cabalidad con los requisitos de estacionamiento dentro de su propiedad.

Con respecto a las variaciones, nuestro Tribunal Supremo estableció en *Empresas Ferrer Inc. v. ARPE.*, 172 DPR 254, (2007), que estas evitan que una reglamentación existente se convierta en un instrumento inflexible e incapaz de amoldarse a situaciones extraordinarias. No obstante, dado al carácter excepcional de las mismas, como regla general, no se favorecen, y sólo deben concederse en situaciones realmente extraordinarias, cuando estén claramente justificadas y procedan conforme a las leyes y reglamentos aplicables. Esto se debe a que el uso inapropiado e indiscriminado de las variaciones pudiese ir en contra de todo nuestro esquema de zonificación y cambiar las características de planificación e infraestructura para ciertos usos.

**III. Aplicación del Derecho a los hechos**

**a.**

El recurrente plantea que OGPe erró al crear e implantar lo que denominó *reglamentaciones excesivas* que a*nulan el derecho constitucional a la propiedad privada* queriendo imponer el diseño de una casa existente en su exterior y, específicamente, en el interior de dicha residencia. Describe tal actuación de la agencia administradora como un *overreach* inconstitucional. Sin embargo, más allá de la mera expresión aludida, no

ahonda en el examen de la amplia jurisprudencia con la que cuenta nuestra jurisdicción al sopesar el poder del Estado cuando interviene en la planificación urbana.

En cualquier caso, lo cierto es que, según subrayamos en la exposición de derecho, la Ley Núm. 161 faculta a la OGPe a emitir y evaluar determinaciones finales sobre los permisos, licencias y certificaciones relacionadas al desarrollo y uso de terrenos. Es decir, la OGPe actuó en el caso de autos partiendo de la delegación expresa del poder regulador establecido por el propio Legislador en el referido estatuto, al considerar la solicitud de un permiso de construcción. Sin embargo, en el recurso de revisión judicial no se explica en qué medida tal delegación de poder constituyó una infracción a principios constitucionales, ni se particularizó sobre por qué en este caso en específico ello fuera así.

Ciertamente, la Constitución del Estado Libre Asociado de Puerto Rico reconoce el derecho al uso y disfrute de la propiedad privada en su Artículo II, Sección 9. Sin embargo, se ha remachado que este derecho no es absoluto y puede limitarse en beneficio del interés general, al amparo del poder de razón del Estado. *Mun. de Guaynabo v. Adquisición m2*, 180 DPR 206, 217 (2010). *Velázquez v. ELA*, 135 DPR 84, 88 (1991), *Culebra Enterprises Corp. et al v. ELA*, 127 DPR 943. 952 (1991) y *Vélez v. Secretario de Justicia*, 115 DPR 533 (1984). Precisamente, en *ELA v. Márquez*, 99 DPR 392, 401 (1966), nuestro alto Foro zanjó que "a estas alturas ya es bien conocido que la comunidad, a través de su Gobierno, puede establecer limitaciones al derecho de propiedad en beneficio del bienestar general". Por otro lado, en el Artículo 9.12 de la Ley 161 se establece lo siguiente:

> A partir de la vigencia de esta Ley: (a) Todo uso, construcción, reconstrucción, alteración, demolición, traslado de edificios en Puerto Rico, instalación de facilidades, subdivisión, desarrollo, urbanización de terrenos, será previamente aprobado y autorizado por la Oficina de Gerencia, Municipios Autónomos con jerarquía de la I a la V o por un Profesional

Autorizado, según aplique, en cumplimiento con las disposiciones legales aplicables. 23 L.P.R.A. § 9019k.

De ordinario, en las sociedades donde se respeta el derecho a la propiedad privada, el desarrollo y uso de terrenos también requiere autorización por un organismo gubernamental competente para que determine si se cumplen los criterios establecidos en los instrumentos de planificación, (la planificación urbana es la norma). Así, en *Richards Group, Inc. v. Junta de Planificación*, 108 DPR 23, 35 (1978), nuestro Tribunal Supremo estableció que el derecho a la propiedad no abarca el derecho a urbanizar un predio sin autorización gubernamental, pues el mismo puede condicionarse.

Por otra parte, si lo que el recurrente alza ante nosotros es más bien una presunta lesión a su debido proceso de ley, baste con afirmar que el tracto procesal revela las múltiples oportunidades que le concedió la OGPe a dicha parte para que cumpliera con las deficiencias que expresamente le fueron señaladas, con el propósito de lograr la concesión del permiso solicitado. A esto se añade que, denegada la solicitud de permiso por la OGPe, el recurrente también utilizó el proceso revisor ante la propia agencia administrativa para tratar de subvertir la decisión inicial, mediante la celebración de una vista en la que se le permitió el desfile de prueba documental y testifical ante un juez administrativo imparcial, antes de advenir en final la decisión administrativa recurrida. En este sentido, se le reconocieron las garantías procesales constitucionales al recurrente, por lo que este primer señalamiento de error no fue cometido.

**b.**

En el segundo señalamiento de error, se esgrime que la OGPe incidió al no permitir las variaciones necesarias *en una urbanización construida hace décadas, y cuyo tamaño en metros cuadrados hacía imposible tener seis estacionamientos, teniendo toda la urbanización escaleras laterales similares a las de la casa del recurrente.* No tiene razón.

Tal como expusimos en el tracto procesal, OGPe denegó la Consulta de Construcción iniciada por el recurrente, luego de haberle concedido varias oportunidades de proveer la información solicitada para tal fin, atribuible al incumplimiento de dicha parte con los requerimientos necesarios para su aprobación, que detallaremos en los próximos párrafos.

Aunque reiteremos sobre datos ya señalados, surge del expediente que el recurrente solicitó la legalización de cuatro apartamentos con medida englobada de 251.85 m/c., aproximadamente. Cada apartamento consta de (2) habitaciones, (1) baño, sala, comedor y cocina. El predio objeto de esta consulta está calificado Residencial Intermedio (R-I) y ubica en una zona A, de acuerdo con la Hoja Núm. 72000C0335J de los Mapas de Niveles de Inundación Base Recomendados, con vigencia del 13 de abril de 2018. Particularmente, en este caso se expidió una certificación de cumplimiento ambiental por exclusión de categoría. Por tanto, el asunto versa sobre una vivienda unifamiliar convertida a estructura de vivienda multifamiliar. La densidad poblacional permitida es de 2.44 UVB y la propuesta tiene una Densidad Poblacional de 3.20 UVB, lo cual sobrepasa lo permitido por 0.76 UVB (1 UVB/114.27 mc).

Para justificar la variación solicitada se adujo que la legalización de estos apartamentos minimizaría la situación de vivienda en el área para personas que están en busca de una vivienda, al estar cerca de familiares. Asimismo, se alegó que, legalizar la construcción de los apartamentos, no afectaría a los vecinos colindantes, ni servicios de agua ni luz, como tampoco generaría impacto ambiental.

Sin embargo, el recurrente omitió atender la situación particular del solar que no le permitía cumplir con las disposiciones reglamentarias. Específicamente, no discutió alternativas para salvar el problema señalado por la OGPe pues, según la tabla de parámetros sometida, el proyecto alegádamente envolvía una variación en área de ocupación que se permite

60%, y se proponía 69%; densidad poblacional, que se permite 1 ubv/150 mc, y se propone 1 uvb/114 mc; variación en patio lateral derecho, que se requieren 2.00 metros, y se propone .19 metros, además de la variación en espacios de estacionamiento, que se requieren (6) unidades y solo se proponen (5). Sobre este elemento, también se requiere un espacio para una salida en retroceso y tamaño de los espacios de estacionamiento provistos.

Los requisitos antes mencionados están claramente estipulados en la Sección 6.1.3.4, Tabla 6.32- Parámetros de Diseño Distrito R-I, Capítulo 6.1 – AREAS CALIFICADAS, Capítulo 8.1- CASAS DE APARTAMENTOS y Capitulo 8.5 – PROVISIÓN DE ESPACIO PARA EL ESTABLECIMIENTO DE VEHÍCULOS del Reglamento Conjunto, según detalló la OGPe en la *Resolución* que luego resultó confirmada por la DRA. Nótese que, aunque la referida solicitud fue subsanada en varias ocasiones por el recurrente, nunca pudo cumplir a cabalidad con lo requerido por la agencia. En específico, el recurrente no anejó al expediente la información solicitada el 2 y 23 de febrero de 2023 por la OGPe, en la que se requería la Certificación del Proyectista firmada y sellada, la Tabla de Parámetros corregida solicitando las variaciones, a lo que se sumó el hecho que el patio lateral derecho de la propiedad estaba solo a .19 metros, pero la tabla de parámetros presentada establecía cumplimiento, por lo que no fue justificada la variación.

Resaltamos que la OGPe denegó la consulta de construcción porque se presentaron variaciones que no fueron solicitadas, ni justificadas, a lo que se unió que las variaciones que conllevaba el proyecto eran intensas y perjudicaba propiedades vecinas. A pesar de estas conclusiones de la agencia administrativa especializada en la ordenación urbana o concesión de permisos, en su recurso de revisión judicial el recurrente no abordó estos asuntos de manera específica. Por tanto, no encontramos que se

nos hubiese puesto en posición de revocar tales conclusiones, al prescindirse de argumentación demostrativa de que el foro recurrido incidiera al concluir que el recurrente presentó variaciones no solicitadas, o que las variaciones no fueran intensas, o perjudicaran las propiedades vecinas.

En resumidas cuentas, el recurrente no logró demostrar que la determinación recurrida estuviera desprovista de evidencia sustancial, y mucho menos que las conclusiones alcanzadas por la OGPe fueran arbitrarias o ilegales, por lo que se impone la deferencia que debemos a la agencia especializada en la aprobación del permiso solicitado.

**c.**

En su último señalamiento de error, el recurrente afirma que incidió la OGPe al permitir como proyectista a una persona que rendía las credenciales para ser ingeniero proyectista, como representante del recurrente, que no compareció a la vista administrativa celebrada. No coincidimos. Vista la determinación administrativa recurrida, juzgamos que la falta de licencia del proyectista no fue el elemento fundamental en la determinación de la agencia para denegar el permiso de construcción, sino las razones que precisamos en la discusión del segundo señalamiento de error. Sobre lo mismo, no observamos en la *Resolución* recurrida que el foro administrativo revisor hubiese puesto el acento en la controversia sobre las credenciales del proyectista como causa de la denegatoria del permiso. Este asunto no merece mayor elaboración.

**IV. Parte dispositiva**

Por los fundamentos que anteceden, se confirma la *Resolución* recurrida.

Lo pronunció y manda el Tribunal y lo certifica su Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones